## BELL CARR v. JAMES D. CRAIG, Appellant.

**Trusts:** ESTABLISHMENT BY PAROL: SUFFICIENCY OF EVIDENCE: To
1 defeat a title, regular on its face, by parol evidence of a resulting or constructive trust arising from an express or implied agreement that such title shall be acquired and held for another, the evidence must be clear and satisfactory. Evidence held insufficient to show that the purchaser at a mortgage foreclosure should acquire the title and hold the same for the benefit of the mortgagor.

**Same:** CONSTRUCTIVE TRUST. Where the purchaser at a mortgage
2 foreclosure induced the mortgagor to allow him to acquire title to the land by means of a promise to refund to him his interest in the premises, intending thus to acquire title and hold it in violation of the agreement, equity will treat his acts as constructively fraudulent and impose upon him a duty in the nature of a trust to carry out his agreement; and this trust obligation may be shown by parol. Evidence held to show an agreement to refund to mortgagor his interest in the property, which includes the equitable interest, rents and any moneys paid the mortgagee to be applied on the mortgage.

**Same:** ENFORCEMENT. Where the apparent interest of the hus-
3 band in land held by him jointly with the wife was purchased with her money, she was guilty of no such fraud toward him in agreeing with the mortgagee that he should acquire title by foreclosure for her benefit only, so as to defeat her right to enforce the agreement with the mortgagee.

**Same:** LIMITATIONS. The statute of limitations does not run
4 against a trust until there has been a denial or repudiation of the trust.

**Trusts:** ENFORCEMENT: ESTOPPEL. Where the mortgagee at a fore-
5 closure sale purchases the property under an agreement with the mortgagor to refund to him the amount of his equity in the premises, the judgment of foreclosure is not conclusive of the rights of the parties; and the mortgagee is estopped to deny the right of the mortgagor to enforce the agreement.

**Same:** PAYMENT: EVIDENCE. Evidence examined and held to sup-
6 port a finding of the trial court that the mortgagor paid certain items to be applied on the mortgage indebtedness, and for which the mortgagee should account, under his agreement to refund the mortgagors equity upon procuring title by foreclosure.

**Same.** Evidence also reviewed and held to show that the trial
7 court erred in failing to allow the mortgagor credit for a certain item.

*Appeal from Adair District Court.*— HON. EDMUND NICHOLS, Judge.

SATURDAY, JUNE 6, 1908.

IN her original petition plaintiff asked to recover judgment, as against the defendant, for money which had been invested by her in part payment for a tract of land, to which she had allowed him to acquire the title in an action to foreclose, brought against plaintiff and her husband, with the agreement that he would refund to her all the money which she had invested in the land.   In an amendment to her petition plaintiff asked that an accounting be had between her and the defendant as to the money invested by him in acquiring title, and that she be decreed to be the absolute owner of said premises on payment of the amount found due to him, if any. The court found that defendant had been allowed by plaintiff to acquire title to the premises on foreclosure, with agreement to repay to plaintiff the sums of money invested by her in the land, and found that the value of plaintiff's interest in the land was $2,097.31, which was declared to be a lien and charge on such land in defendant's hands, and decreed that plaintiff have judgment against defendant for costs, and that a special execution issue for the sale of the premises to satisfy the amount of plaintiff's interest.   Both parties appeal, but as defendant's appeal was first perfected, he will be designated as the appellant.   *Modified* on plaintiff's appeal, and *affirmed* on defendant's appeal.

*Frank B. Wilson,* for appellant.

*Haddock & Haddock* and *Hager & Powell,* for appellee.

McCLAIN, J.— The plaintiff is the sister of the defendant, and acquired title to the land involved in this suit by purchase from one Cole in 1893. It appears that, although plaintiff's husband, Clarence Carr, with whom she was living at the time of contracting with Cole, but from whom she subsequently separated, invested no money in the property, the deed by Cole was made to plaintiff and her husband as joint grantees, and that, subsequently, some negotiations were had between plaintiff and defendant with reference to a foreclosure proceeding, to be brought by defendant against plaintiff on account of an out-standing purchase-money mortgage, as the result of which plaintiff's husband's apparent title as owner in common with plaintiff should be extinguished. The method of accomplishing this extinguishment was, according to plaintiff's testimony, that defendant should buy in the property at foreclosure, and either account to plaintiff for the money which she had already invested, or hold title in trust for her, subject to the payment by her of whatever money defendant had invested in acquiring title.

I. We are first met with the question whether plaintiff was a creditor of defendant to the extent of the money which she had invested, with a claim on the land for its repayment, or whether defendant held the title under the foreclosure proceedings in trust for plaintiff, with an obligation on plaintiff's part to repay to him the amount of his investment. After an examination of the record we reach the conclusion that plaintiff has not established the claim, made in her amended petition, that defendant holds the title in trust with a duty to convey to plaintiff on the payment of the amounts expended by him in acquiring such title. To defeat a title, regular on its face, by parol evidence of a constructive or resulting trust, arising from an express or implied agreement that such title shall be acquired and held for another, the evidence must be clear and satisfactory. *Cunningham v. Cun-*

1. TRUSTS: establishment by parol: sufficiency of evidence.

*ningham,* 125 Iowa, 681; *Andrew v. Andrew,* 114 Iowa, 524; *Murphy v. Hanscome,* 76 Iowa, 192.

The agreement between plaintiff and defendant, under which the latter was allowed to institute foreclosure proceedings against the plaintiff, and acquire a title without resistance on her part, was, according to plaintiff's own testimony, that he was to hold the land for her, or for repayment to her of the money which she had invested in the land; and such corroboration as there is in the record of her story indicates that defendant's promise was to see that she got back her money out of the land. The circumstances under which this arrangement was made, according to plaintiff's showing, lends countenance to such an agreement. Plaintiff had invested, according to her own account, but a small portion of the purchase price, and given mortgages for the balance, and was without means or income from the land or otherwise to keep up interest payments and pay off the installments of mortgage indebtedness as they fell due. Under these circumstances it seemed inevitable that she must lose everything that she had invested, unless some arrangement could be made by which the property could be taken care of for her. The evidence does not show such a solicitude for plaintiff's welfare on the part of defendant as that she would be justified in supposing that he was willing to buy up or assume the payment of the outstanding mortgages and hold title to the land, merely as security for his investment and liability, with the privilege on the part of the plaintiff to redeem the title by repayment of the investment, and there is no evidence that either party supposed plaintiff would ever be able to redeem under such arrangement, or that plaintiff was to become the debtor of defendant for the money invested by the latter. We believe the evidence, even should we concede the entire truthfulness of plaintiff's own testimony falls short of establishing, with any reasonable certainty, an agreement on the part of defendant to hold the title to the land in trust for plaintiff, and in this respect we find the

complaint, made on plaintiff's appeal, as to the correctness of the decree of the lower court to be without foundation.

II. We are satisfied, however, that there was an arrangement between the defendant and the plaintiff by which the former was to acquire title, subject to a trust obligation to refund to the latter the money which she had invested in the property. As to such agreement there is a direct conflict in the evidence, but the circumstances point strongly to the truthfulness of plaintiff's testimony. That the plaintiff had some money invested is beyond controversy; the amount being in dispute. There seems to be no explanation of her voluntarily turning over to defendant, as she did, the evidence of payments made on the purchase price and on the mortgage indebtedness, enabling defendant to treat these payments as made by himself, in order to show a claim on which a foreclosure proceeding could be predicated, unless there was an arrangement by which some benefit therefrom was to accure to the plaintiff. The relations of the parties at the time the arrangement for the foreclosure of the mortgage was made were friendly, and it is incredible that defendant should have been in good faith buying up claims against the plaintiff in order to cut off her interest in the property, and doing so by her consent and assistance, unless there was some arrangement by which she was to be benefited by the transaction. We agree with the lower court in holding that such an arrangement was made as testified to by plaintiff and that, as an inducement for not opposing, as well as for facilitating, the foreclosure proceedings, defendant promised that he would refund to plaintiff whatever money she had invested, and hold the title acquired by the foreclosure proceeding subject to a trust obligation to make such repayment. We see no difficulty about establishing such a trust obligation in a court of equity by parol evidence. Such evidence is not to be shut out on the ground that it tends to show an express trust in land in violation of the statute of frauds, but is admissible to establish a construc-

<span style="margin">2. SAME: constructive trust.</span>

tive trust, arising from the violation by the defendant of the confidence reposed in him by his own procurement, violation of which constituted a fraud. There is enough in this record to show that, while defendant induced plaintiff to allow him to acquire title to her land by foreclosure, by means of a promise to refund to her the money she had invested, his real intention was to acquire title, and hold it in violation of such agreement. This purpose is evidenced by his subsequent conduct. Under such circumstances a court of equity will treat the acts of the defendant as constructively fraudulent, and defeat his attempted wrong by imposing upon him a duty in the nature of a trust to carry out his agreement, although established only by parol evidence. *Gregory v. Bowlsby,* 126 Iowa, 588; *Crossman v. Keister,* 223 Ill. 69 (79 N. E. 58, 8 L. R. A. [N. S.] 698, 114 Am. St. Rep. 305); *Larmon v. Knight,* 140 Ill. 233 (29 N. E. 1116, 33 Am. St. Rep. 229); 2 Pomeroy, Equity (2d Ed.), section 1044, 1055.

Confidential relations between the parties are not essential to give rise to such constructive trust, although they are often referred to as the means by which the fraud is perpetrated. The breach of confidence which a court of equity will construe as constituting fraud is the procurement of title, by the consent of another and to the latter's prejudice, on a fraudulent promise as to the disposition which will be made of the property after title is procured, and the violation of the agreement thus made in attempting to hold the title free from such constructive trust. We have no difficulty, therefore, in reaching the conclusion that defendant should be compelled to carry out his agreement to repay plaintiff the money which she had invested in purchasing the property, extinguishing the principal and interist of the mortgage indebtedness, paying taxes, and the like. In the amount to be repaid to her must be included rents and other moneys paid to the defendant, and accepted by him with the

understanding that they should be applied in reduction of the mortgage indebtedness.

III.    It is argued, however, for defendant, that plaintiff herself was guilty of a fraud in conniving with defendant to cut off, by foreclosure proceedings, her husband's title

3. SAME: enforcement.
as co-owner under the deed which named herself and her husband as grantees, and that equity will not recognize the claims of one who is attempting to perpetrate a fraud.    But there is no evidence that any fraud was intended.    The evidence shows without conflict that plaintiff furnished the entire purchase money, so far as it was paid at the time of or prior to the making of the conveyance, that her husband invested nothing whatever in the property, and that it was without plaintiff's knowledge or consent that her husband was named as a joint grantee. Under such circumstances whatever apparent interest the husband had in the land was held in trust for plaintiff, and she was guilty of no fraud toward her husband in consenting to proceedings which should result in divesting him of a merely apparent or colorable title, not supported by any real interest.    The equitable rule that a plaintiff asking relief must come into equity with clean hands has reference only to the relations between the parties, and arising out of the transaction.    " It does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party had no concern." *Chicago v. Union Stock Yards, etc., Co.,* 164 Ill. 224 (45 N. E. 430, 35 L. A. R. 281) ; 1 Pomeroy, Equity (2d Ed.), section 399.    There is nothing, therefore, in the conduct of plaintiff, with reference to the intended extinguishment of her husband's apparent title as co-owner, to justify a court of equity in refusing relief to her on the ground of defendant's constructive fraud.

IV.    The statute of limitations is relied upon by defendant to defeat plaintiff's claim on the theory that defendant's obligation to repay, if any, arose when he acquired title

by foreclosure in 1899, and that this action was instituted

**4. SAME: limitations.** more than five years thereafter. But it was not until 1902 that defendant repudiated the trust, by requiring plaintiff to remove from the premises, without accounting to her for the money invested. Until that time defendant was charged, as trustee, with the general duty of making repayment as a condition to holding his title as against plaintiff. The statute of limitations does not run against a trust until there has been some denial or repudiation of it by the trustee. *Smith v. Smith,* 132 Iowa, 700; *Zunkel v. Colson,* 109 Iowa, 695; *Widner v. Wilcox* 131 Iowa, 223; *Newis v. Topfer,* 121 Iowa, 433.

V. It is argued for defendant that the judgment in the foreclosure decree is conclusive, and estops plaintiff from insisting that anything whatever is due to her from the defendant on account of money invested in the

**5. TRUSTS: enforcement: estoppel.** land. This would be so were it not for the constructive fraud committed by defendant in procuring title in the foreclosure proceeding, with the agreement that he would subsequently account to plaintiff for the money invested by her, and then violating the agreement thus made. This constructive fraud goes back of the foreclosure judgment, and renders it wholly inconclusive as to the rights of the parties. The cases cited in support of the conclusiveness of judgments have no application to such a state of facts.

VI. The only question of real difficulty in this case is to determine under the evidence how much the defendant should pay to the plaintiff. The testimony of plaintiff and that of defendant are irreconcilably in con-

**6. SAME: payment: evidence.** flict, for the reason that defendant claims that he himself, or his mother, Jane Craig, paid nearly all the items of installments of purchase money, interest, taxes, etc., for which plaintiff claims credit. But it seems to us that if defendant or his mother had paid out money to preserve plaintiff's land to her before there was

any arrangement that defendant should, foreclose the mortgage and take title to the land in his own name, the vouchers would have shown by whom payment was made. When plaintiff took title, she procured a loan of $1,200 on the land (120 acres), and out of this money, and some money which she already had, she made a small payment on the purchase price, and gave to the vendor a second mortgage to secure the payment of four notes of $525 each, maturing in successive years. Plaintiff claims that she had in her possession and turned over to the defendant, two of these notes marked " Paid," some coupons for interest payments on the $1,200 mortgage, and some tax receipts. We think the evidence supports the finding of the trial court that the vouchers represented money actually paid by plaintiff. The trial judge had the opportunity of hearing the conflicting testimony of the witnesses as given on the stand, and we are justified in giving some weight to his conclusions with reference to their credibility. The main controversy is as to whether the two notes above referred to were paid by plaintiff or Jane Craig, her mother, who was surety on the notes secured by the second mortgage. The notes, which have been transmitted to us for examination, simply show that they are stamped by a bank as paid. If they had been paid by Jane Craig as surety, she would have had them in her possession. But we find with the trial court that they were, after payment, in the possession of the plaintiff, and were by her delivered to the defendant.

Much is said in argument for defendant as to a partnership relation between himself and his mother, in order to support the theory that these payments, as well as others which he claims the benefit of, were made out of partnership funds, and not by his mother individually. Defendant brought the foreclosure proceedings in his own name, claiming to be the owner of the second mortgage and the notes secured by it, and there is no evidence in the record anywhere that any of the transactions, on the part of the de-

fendant or Jane Craig, with reference to plaintiff's land, were partnership transactions. In the absence of any evidence that payments made by Jane Craig were made out of partnership money, and for partnership purposes, the payment of the first two notes by her would furnish defendant no better authority for claiming in the foreclosure proceeding that he was the owner of these two notes, and that they were unpaid, than would the fact of the payment of the same notes by plaintiff, and their delivery to defendant, in pursuance of the general arrangement that he should claim, without objection on her part, that he was the owner of said notes. What appears is that the notes were, in fact, paid before they were introduced in evidence in the foreclosure proceeding as showing an unpaid indebtedness of plaintiff under the mortgage. The claim for defendant that plaintiff had no money with which to make payment of these notes is not persuasive as against the entire lack of evidence to indicate when, why, and how they were paid by Jane Craig or himself. As defendant has not specifically impeached the payments, claimed to have been made by plaintiff, for which the court allowed her credit, save in the general way above indicated, we do not find it necessary to go further into the items of the account allowed by the lower court.

VII. On plaintiff's appeal there is a question as to one item, disallowed by the trial court, which should be separately noticed. On the back of the second note, which 7. SAME. plaintiff claims to have paid and to have turned over to defendant, is a credit of $130, of a date prior to the date of cancellation of the note as paid, and there is in evidence a note of plaintiff to Jane Craig; bearing the same date as that on which the second $525 note was stamped as paid, and payable, at the same bank, for $427.25, which counsel on each side seem to concede was the amount to be paid on that note at the time payment was made. The contention for defendant is that Jane Craig furnished the money with which this balance due on the

second note was satisfied, and that plaintiff executed her note for that amount. The accounts given by plaintiff and Jane Craig in their testimony as to this $427 note are of the vaguest character. Neither one seems to recollect the transaction, nor the occasion for it. But, as already suggested, there is no support anywhere in the record for the claim that the money thus furnished by Jane Craig, if it was furnished by her, was furnished from partnership funds, or that defendant had any interest therein, or is entitled to any credit therefor. If plaintiff did borrow the money from her mother with which to complete the payment of the second mortgage note, that was a matter, so far as it appears, wholly between her and her mother, and with which defendant has no concern. If plaintiff turned over the second note to defendant as fully paid, and he got a judgment in the foreclosure proceeding covering that note, he is, as we think, bound to reimburse plaintiff for the full amount of that note, and we reach the conclusion that the trial court erred in deducting $427.25 from the credits for which plaintiff claimed reimbursement.

The result is that on plaintiff's appeal the amount, for which plaintiff should have judgment against defendant, is increased by $427.25, and on defendant's appeal the judgment is affirmed.

*Modified* on plaintiff's appeal, and *affirmed* on defendant's appeal.