GEORGE HENNINGER, as Guardian of the Estate of FRANCIS N. RACINE, an Incompetent, Appellant, v. JOHN McGUIRE ET AL., Appellees.

**Resulting trusts:** PAROLE EVIDENCE: SUFFICIENCY. A guardian seeking to establish a resulting trust by parol, for the purpose of impeaching the legal title to land in favor of his ward, must support his claim by clear and satisfactory evidence; especially where he is relying on parol proof of declarations of a deceased legal owner made many years before the institution of the suit, and unaccompanied by any evidence of the recognition by decedent of any trust, or of any action on the part of the ward asserting any right to the property.

**Equitable actions:** EVIDENCE: DETERMINATION OF ADMISSIBILITY: TRIAL *de novo.* On a motion to dismiss a bill in equity for want of evidence authorizing the relief asked, the court may determine what evidence offered by plaintiff and received without rulings on objections interposed at the time may properly be considered; and the appellate court in such equitable action may determine the competency and admissibility of the evidence received without rulings upon objections thereto, in reaching a conclusion on the merits of the case.

**Resulting trusts:** EVIDENCE. To support a resulting trust in favor of a grantee who, on the date of the conveyance to him made a conveyance to another, the evidence must show that some part of the purchase price was paid by such grantee, or that money advanced by him was used in payment of the price or some part thereof.

**Trusts:** EVIDENCE. In this action to establish a trust in land in a parent, who acquired title through a son acting merely as a conduit for passing the title, evidence simply that the parent expressed a purpose at some future time to convey the land to the son as a provision for him, was, in the absence of any evidence of an agreement to hold the title as an inducement for the conveyance to the parent, insufficient to establish the trust.

**Same.** Where a parent, in whom it was sought to establish a trust in land in favor of a son, managed the property as the head of the family, transacting the business and receiving the proceeds of the land, the fact that the son worked on the farm, but with no contract with the parent under which he was to receive the proceeds of the land, and no portion of the proceeds was turned over to him as his own, did not establish in him a right to the proceeds.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MARCH 8, 1910.

ACTON in equity to set aside a deed from Francis N. Racine, a person now under guardianship, to his mother, Mary Racine, now deceased, purporting to convey a forty acre tract of land, and to have said deed decreed to have been as between the parties a mortgage only, which has been fully canceled and discharged, and to quiet title in said land against the defendants, who are the heirs and administrator of Mary Racine claiming under her will devising the land to them. At the conclusion of the evidence for plaintiff, the case being by order of court closed, the defendants moved to dismiss plaintiff's petition for the reason that he failed to show himself entitled to any relief. The court sustained this motion and entered a decree for defendants, from which plaintiff appeals.— *Affirmed.*

*Mills & Perry* and *O. S. Franklin,* for appellant.

*Clark & Byers* and *I. W. Douglass,* for appellees.

McCLAIN, J.—The facts involved in this case, so far as they may be regarded as established beyond question or admitted, are: That Francis N. Racine was subjected to guardianship by action of the proper court about one year prior to the institution of this action in 1909; the finding of the court being that he was of unsound mind and incapable of managing his business affairs, and was already heavily involved in litigation which he did not understand or appreciate, and that he himself desired that a guardian be appointed for his estate, to the end that his property be conserved and his legal rights therein protected; and that on June 21, 1880, the forty acre tract of land, title to which is involved in this action, was conveyed to Francis N. Racine by one Cahoon, and on the same date conveyed by Francis to his mother, who still on the same date executed a mortgage thereon for $500 to one Beck, which mortgage was satisfied in the latter part of the year 1881. The contention for plaintiff is that the deed from Francis to his mother, reciting a consideration of $800 in hand paid, was in fact a mortgage, and that the indebtedness to secure which the deed by way of mortgage was given has been satisfied, and that Francis became entitled, on the satisfaction of Mary Racine's mortgage to Beck, to a reconveyance of the land. There is a further contention that the purchase price of the land was furnished by or on behalf of Francis, and that his mother held title subject to a resulting trust in his favor. And there is still further contention that Mary Racine took title to the land with a promise on her part to reconvey it to Francis when the Beck mortgage should be satisfied, which promise gave rise to a constructive trust in Francis which a court of equity may now enforce. So far as we shall have occasion to consider the allegations of defendants' answers, they amount to a general denial of the allegations for plaintiff. It should be said, also, that plaintiff alleges mental incapacity of Francis at the time the

deed to his mother was executed, he being then about twenty-four years of age,· and continuously thereafter until the appointment of a guardian for him, and that he was under the control of his mother down to the time of her death, in 1907, during which time he resided almost continuously with her as a member of her family. The allegations of mental incapacity on the part of Francis are also denied by defendants. As throwing some light on the relations of the parties, it should be stated, also, as uncontroverted, that the defendants, save the administrator of Mary Racine's estate, are children or descendants of children born to her by a marriage prior to her marriage to the father of Francis Racine, and that, as recited in Mary Racine's will, as a reason for devising the land in controversy to her child by the former marriage, her children by the marriage to Racine had title to another forty acre tract constituting Mary Racine's homestead subject to a life estate in her.

I. As plaintiff seeks in behalf of his ward to impeach by parol evidence the legal title of defendants derived from their mother, in whom the legal title of the

1. RESULTING TRUSTS: parole evidence: sufficiency.
forty acre tract in controversy rested until the time of her death, it is necessary that, to entitle him to relief, the evidence in support of his claims be clear and satisfactory; otherwise relief should not be granted. *Carr v. Craig*, 138 Iowa, 526, and cases there cited. This rule is especially applicable in this case in view of the fact that plaintiff relies entirely upon parol evidence as to declarations of Mary Racine, now deceased, alleged to have been made between 1880 and 1889, and therefore made, if at all, more than twenty years before this suit was instituted, and that during this period of twenty years there was no act or declaration of Mary Racine, so far as the evidence tends to show, recognizing the existence of any trust as to the property in favor of her son Francis and no action on the

part of Francis in the nature of an assertion of title or right in or to the property as against his mother.

II. In this connection it is proper to notice a claim for plaintiff that, on a motion to direct a verdict or for a finding of facts by the court that plaintiff's claim is not sustained by the evidence, the court should not consider objections to evidence which have been received in the course of the trial, and that, applying this rule in the present case, it was the duty of the court below, and it is now the duty of this court, to consider all the evidence offered for plaintiff in the case without regard to its admissibility. It is to be noticed, however, that the authorities cited in support of this rule involve only its application in law actions, with one exception to be noticed hereafter. Without expressing any view on the question whether the court in ruling on a motion by defendant for a directed verdict may exclude from consideration evidence which, according to defendant's contention, has been improperly received and should not be considered, we have to say that the rule relied upon for plaintiff can have no application whatever in a case like this, where plaintiff is in an equitable action seeking relief which only can be granted by a court of equity. Counsel for defendant asked that on the evidence introduced by plaintiff the bill be dismissed on the ground that there was no evidence that would entitle plaintiff to the relief asked. The question to be decided by the court in ruling on this motion, assuming it to be a proper motion to interpose, was the identical question which the court would have been required to decide had the case been finally submitted with no evidence for the defendant and we know of no authority for holding that under such circumstances a court of equity can not determine that evidence offered for the plaintiff is of such character that it should not have been

*2. EQUITABLE ACTIONS: evidence: determination of admissibility: trial de novo.*

introduced and can not be considered in determining the issues.

The only equity case decided by this court which counsel rely upon is that of *Brewer v. Hugg,* 114 Iowa, 486; but, while that was a case in equity, the question to be determined was only whether plaintiff had made out a right to recover at law, the equitable relief asked being only the foreclosure of a mechanic's lien for whatever amount might be due from defendant to the plaintiff. It is evident that this case lends no support to the rule of equity practice for which appellant contends, and which we do not find to be recognized anywhere as a proper rule of procedure. The record seems to indicate that the court treated the case on defendant's motion, with the consent of the latter, as having been finally closed, and we very much doubt whether, if the court had ruled against defendants, they would have been entitled to then introduce evidence to meet the case made by plaintiff. The decision of the question presented is not, however, of any controlling importance in the determination of this case, for the reason that we shall dispose of it on the assumption that all the evidence offered was properly considered by the lower court. As is the usual practice in equity in this State, all the evidence offered was made of record without rulings of the court on objections interposed, and it is all before us. Under such a state of the record, it is proper for us, as it was proper for the lower court, to determine the competency and admissibility of the evidence thus offered in reaching a conclusion on the merits.

III.   To simplify the issues to be determined, we may say at the outset that there is no evidence, as will appear from a fuller discussion of the testimony in the concluding division of this opinion, which would justify a finding that the deed from Francis Racine to his mother was in fact a mortgage. It is well settled that, to support such a finding, it must appear

3. RESULTING TRUSTS: evidence.

either expressly or by implication that there was an indebtedness from Francis to his mother for which the land was conveyed as security, and we find not the slightest evidence of any agreement on the part of Francis creating or recognizing any such indebtedness. It will be equally unnecessary to discuss the question whether in view of the alleged mental incapacity of Francis and the influence exercised over him by his mother either in fact or in presumption, on account of the relations existing between them, the deed ought to be set aside. There is no evidence of actual fraud or misrepresentation or undue influence. If we shall find that Francis had no interest in the property whatever, then there will be no possible occasion for setting aside the deed; and if, on the other hand, we shall find a resulting or constructive trust, then relief can be granted to the plaintiff without regard to the mental incapacity of Francis or the confidential relations existing in fact or as a presumption of law between him and his mother. The facts as to mental capacity and relationship may have some bearing on the credibility of the evidence; but, under the issues as presented, they furnish no ground for independent relief.

IV. If plaintiff is entitled to any relief, it is either because he furnished a portion of the consideration for the purchase of the land, title to which passed from him to his mother, or because, having already acquired an interest in the land, he was induced to convey it to his mother on the strength of her promise that she would reconvey when the balance of the purchase price to secure which the mortgage to Beck was given had been paid off. Without attempting now to distinguish between a "resulting" and a "constructive" trust, it is evident that, unless the land was acquired by Francis from Cahoon in his own right or by the investment therein of his own money or money furnished to him for the purpose, Francis has no equitable interest in the property

4. TRUSTS: evidence.

entitling him to relief.  The testimony relied upon for plaintiff, so far as it relates to these questions is given by a brother and sister detailing conversations in the family about the time the land was conveyed by Cahoon to Francis, and the most that can be claimed for it is that it shows the following state of facts:  Mary Racine's father, James Miller, who was then a member of her family, owned the land in controversy prior to 1880.  On May 13th of that year, while he was visiting in the family of Cahoon, he sold and conveyed the land to the latter for a recited consideration of $800.  When he returned a few days afterward to the home of his daughter and advised her as to what he had done, she seriously objected to his action, on the alleged ground that he had said he was going to give that land to Francis.  Miller seems to have admitted that he had had such intention and to have expressed regret at what he had done, and he offered to give back what money he had left from the purchase to enable his daughter to recover the title from Cahoon if she could do so.  Some arrangement seems to have been made by her with Cahoon for a reconveyance of the land on the payment of $800, and, as her father was able to furnish apparently only $300 of this amount, she desired to borrow $500 to complete the purchase.  Cahoon made it a condition of reconveyance that the title should pass to Francis, but his mother was not able to secure a loan of $500 to Francis on the land; Beck, from whom the money could be borrowed, insisting that he would loan it only to Francis' mother.  Thereupon, to wit, on June 21st, as already stated, Cahoon conveyed to Francis, receiving, as must be presumed, the full consideration, and Francis at once conveyed to his mother, who mortgaged the land in her own name to Beck.  The witnesses draw the inference that $300 were furnished by Miller; but it does not definitely appear what sum, if any, he furnished, or upon

what condition it was furnished, or for that matter, whether it was given to Francis or to his mother.

The most favorable interpretation which can be placed upon the evidence in support of plaintiff's claim is that Miller furnished some money to his daughter with the purpose that she should secure the land with the intention of ultimately conveying it to Francis. Indeed, the only evidence that Miller furnished any money to Francis is found in the testimony of these witnesses that he expressed a willingness to give up what money he had left of the amount received from Cahoon to enable his daughter to recover the land, and that $300 were necessary for that purpose in addition to the $500 borrowed from Beck. There is also evidence that Mary Racine had little or no property beyond her homestead and no means with which to make the purchase. In the absence of any satisfactory proof that Miller advanced $300 to Francis for the purpose of making this purchase, we are unable to see how we can establish a resulting trust in his favor, even to an aliquot part of the land conveyed to him by Cahoon. He seems to have served simply as a conduit for the title from Cahoon to his mother in order to enable his mother to get the title which Cahoon was unwilling to convey save to Francis. It is evident that a mere intention on the part of Cahoon that Francis should have the land, or a desire on the part of Miller that after his daughter acquired it she should convey it to Francis, would not establish a trust which Francis could enforce. The title could not have been procured by Francis without the affirmative intervention of his mother and her action in procuring on her own responsibility the $500 from Beck; and the sole question, as we think, is whether Mary Racine entered into an affirmative obligation to hold the title received by her for Francis. There is no written evidence of any such obligation such as is required by the statute of frauds, and there is no affirmative evidence of a parol agree-

ment on her part to so hold the title made to or in behalf of Francis as an inducement for him to convey to her the title such as would give rise to a constructive trust. The most that can be said is that she expressed a purpose or intention that at some future time, after the mortgage should be satisfied, she would convey it to Francis as a provision for him. Other witnesses besides the brother and sister, already referred to, who speak of the arrangement made in the family, testify to declarations on the part of Mary Racine that she intended the land for Francis; but the declarations do not, when fairly considered, amount to more than an explanation of a purpose ultimately to give it to him. It is, of course, too clear to justify citation of authorities that, unless some trust obligation rested upon Mary Racine to hold the land for Francis, proof of mere declarations of an intention to give it to him will not warrant the enforcement in equity of a conveyance. So far as the evidence already referred to goes, if given all the force contended for by plaintiff, the interest of Francis in the land would not exceed that arising from furnishing $300 of the purchase price paid to Cahoon, and he would be entitled only to an aliquot part, or the whole on reimbursement of the $500 furnished by his mother. Plaintiff does not contend that Francis is entitled to an aliquot part, nor does he offer to repay in any way the remainder of the purchase price.

In order to show that Francis is entitled to the entire property without reimbursement, plaintiff sought to prove that the $500 mortgage to Beck which was satisfied in the latter part of the year 1881 was in 5. SAME. fact paid off by Francis out of the proceeds realized from farming the land in controversy and the homestead belonging to his mother. It appears without question that Francis labored on the farm; but it is equally without question that his mother was the manager as well as the head of the family, that she transacted the business,

and that she received the proceeds of the farming operations. It appears, also, that the brother of Francis, who testifies as a witness in his behalf, worked on the farm without specific compensation during the period intervening between the giving of the Beck mortgage and its extinguishment. If the Beck mortgage was in fact paid from the proceeds of the farm, it can not be said that it was so paid by Francis, or that the money with which it was paid was entirely the result of his labor. There is no evidence of any contract between him and his mother under which he was entitled to the entire proceeds of the farming operations, nor that any specific portion was turned over to him as his own with which the mortgage was satisfied. We think the only conclusion which the evidence justifies is that Mary Racine acquired title to the land in controversy in part by money furnished to her for that purpose by her father, and as to the residue by applying to the satisfaction of the Beck mortgage the proceeds of the farm which she carried on by the assistance of Francis and his brother with the intention on her part to ultimately convey to Francis, which intention she was under no legal or equitable obligation to carry out.

The decree of the trial court is therefore *affirmed.*