Benjamin S. Benson et al., Appellants, v. Mary T. M. Sawyer et al., Appellees.

Mabel Benson Sakis et al., Appellants, v. Mary T. Sawyer et al., Appellees.

No. 41577.

June 20, 1933.

Rehearing Denied September 29, 1933.

842

Roberts & Roberts, for appellants.

Jones & White, for appellees.

Gilmore & Moon and George L. Gillies, for interveners.

CLAUSSEN, J.—This is an action in equity, consequently it is triable *de novo* in this court. The case can be more readily understood if the issues presented by the pleadings are clearly defined. The case presents no unusual questions if consideration is limited to the issues tendered by the pleadings. In the petition it is alleged that plaintiffs acquired interests in real property, described in the petition, formerly owned by Mary T. Leighton, deceased, under a contract dated June 24, 1925, with defendants who were beneficiaries under the will of said decedent, by which defendants each agreed "to give, transfer, assign and set over, and did, by said written instrument, give, transfer, assign and set over unto these plaintiffs, 30 per cent of the first $20,000.00 less inheritance tax, received by her, (from the Leighton Estate) or of any lesser sum if $20,000.00 be not received, also the first 20 per cent of the next $20,000.00 less all inheritance tax, received by her, or any lesser sum if $20,000.00 be not received"; that Mary Sawyer had mortgaged her interest in said property; that the defendants would convey their interests in such property unless restrained from so doing, and asking that the interests of plaintiffs be established and confirmed in the real property, and the defendants enjoined from conveying their interests in said real property free from plaintiffs' rights. The defendants answered admitting, in substance, the allegations of the petition. Interveners filed a petition of intervention, alleging that Mabel Sakis owned an undivided interest in a parcel of the real property, that may for convenience be designated as the Leighton Block; that on April 9, 1929, interveners made a contract with defendants by which they agreed

to sell such one-third interest to the defendants; that the defendants have failed to perform such contract; that suit had been brought by interveners against defendants for the specific performance of such contract which suit was then undetermined; that an attachment in the sum of $10,000 had issued in said suit and had been levied upon the interests of defendants in the Leighton Block, whereby interveners acquired a lien in the amount of $10,000 upon such interests.

Interveners further alleged that the extent of plaintiffs' interest *"under their alleged contract as pleaded in the petition"* could not be determined without an accounting between plaintiffs and defendants, and that plaintiffs were not entitled to any relief or the establishment of a lien on the property "until after *such* an accounting shall have been had between the plaintiffs and the defendants" and the rights of plaintiffs determined in some proper proceeding.

It was also alleged that plaintiffs had received satisfaction of their claims under such agreement through the conveyance of real estate in Kansas, to Ben S. Benson, as trustee for plaintiffs.

The petition of intervention contained allegations as a basis for a prayer that the property be marshaled, but such allegations are omitted because they are not material to the determination of the case. Interveners asked that the court order an accounting between plaintiffs and defendants to determine the amount due plaintiffs *"under the agreement referred to in plaintiffs' petition"*; that it be decreed that plaintiffs' claims were satisfied by the conveyance of the Kansas land to the trustee for plaintiffs, and for general equitable relief.

It is necessary to allude to but one allegation of the answer filed by plaintiffs to the petition of intervention. Plaintiffs alleged that the defendants were indebted to them for miscellaneous items of expense and advancements, and that Kansas land had been transferred to a trustee for plaintiffs as security for such advances and expense and any deficiency that might be due plaintiffs after the application of the Ottumwa property to plaintiffs' claims under the contract of June 24, 1925.

Shortly before the trial an amendment was filed to the petition of intervention alleging that prior to the 19th day of January, 1931, plaintiffs sold and transferred all their interest in the real property in question to defendants and were, in consequence, no longer entitled to the relief demanded.

In this state of the pleadings the case came on for trial on June 8, 1931. Summarized, the claims of the parties were as follows:

Plaintiffs claimed an interest in the real property in question under their contract with the defendants and asked that their claims be established against the property, and that defendants be restrained from disposing of the property free from such claims.

Interveners claimed a lien on the property under their writ of attachment, and concerning plaintiffs' claims contended: That the extent of plaintiffs' claim could not be determined without an accounting between plaintiffs and defendants to determine the amount due under their contract; that plaintiffs' claims were extinguished by the transfer of Kansas land to a trustee for plaintiffs; and that plaintiffs had sold their interests to defendants.

They asked that an accounting be ordered between plaintiffs and defendants to determine the extent of plaintiffs' interests under the contract; that it be decreed that plaintiffs' claims were satisfied by the transfer of the Kansas land to a trustee for plaintiffs and that the petition be dismissed.

I. A contract was entered into between plaintiffs and defendants under date of June 24, 1925, in relation to their interests in the estate. The contract was introduced in evidence upon the trial but is not found in the record before this court. In the petition it is alleged that by such contract the defendants each "agreed to give, transfer, assign and set over, and did, by said written instrument, give, transfer, assign and set over unto these plaintiffs, 30 per cent of the first $20,000.00 less inheritance tax, received by her, or of any lesser sum if $20,000.00 be not received, also the first 20 per cent of the next $20,000.00, less all inheritance tax, received by her, or any lesser sum if $20,000.00 be not received."

In setting forth the exhibits the abstract recites:

"Exhibit 1 is the original agreement between plaintiffs and defendants which is fully described in plaintiffs' petition hereinbefore set out."

We glean some information in relation to this contract, in addition to the terms pleaded in the petition, from the testimony of the witnesses, and conclude that the contract was not limited to money but applied to all property of the estate of decedent which defendants received, and provided that the value of the interests acquired by plaintiffs should be determined on the basis of values

fixed for inheritance tax purposes, and that the defendants should discharge the interest acquired by plaintiffs by paying for them when the defendants came into possession of the property in the course of the administration of the estate. The contract is either an agreement for the payment of money or it is a transfer of an interest in the property of the estate passing to defendants. The contract is evidently more than an agreement for the payment of money. It will be observed that the defendants agree to, and do *give, transfer, assign and set over* something to plaintiffs. The extent of the interest thus created is difficult of ascertainment, because it was to be measured by reference to values fixed for inheritance tax purposes. In so far as the real property was concerned, title vested in the devisees upon the death of the testator, and such devisees were at liberty to carve their interests into such parts as they saw fit. The fact that the contract provided that the interest given by the contract should be redeemed when the property came into the possession of defendants is not inconsistent with the thought that the contract created a present interest in the specific property of the estate passing to defendants. We arrive at the conclusion that the effect of the contract was to create, in plaintiffs, an interest in the specific property of the estate received by the defendants. Our conclusions in relation to the meaning of the contract are the same as those of the trial court.

The administration of the estate of the decedent was attended with difficulties. Ultimately, an agreement was entered into between certain beneficiaries by which much of the property of the estate was divided between them. It appears that this agreement was confirmed in a decree in a partition suit. The agreement and the decree appear to have been introduced in evidence in the trial court. They are not contained in the record, but it satisfactorily appears that as a result of such proceedings the defendants and Mrs. Sakis each became vested with a one-third interest in the Leighton Block, and the defendants became vested with interests in a farm in Iowa, referred to as the Crescilius farm, and farm lands in Kansas.

Complaint has not been made of the valuations of the interests of the defendants in the several properties fixed by the trial court. The court found that in the case of Mary T. Sawyer such value was $20,538.71 and that the value of the plaintiffs' interest in such properties, under the contract, was $6,107.79; that the value of

the property received by Rosalie Peterson was $21,461.18 and the value of plaintiffs' interest in it, under the contract, was $6,292.24, thereby making the total value of plaintiffs' interest $12,400. The court found the values of the properties to be such that the Leighton Block comprised 70 per cent, the Kansas land 27½ per cent, and the Crescilius 2½ per cent of the total value. These findings are sustained by the record. Accordingly, the value of the interests of plaintiffs, in the several properties, determined in accordance with the terms of the contract, are as follows:

Leighton building, against interest of Mary Sawyer.............$4,275.45
Leighton building, against interest of Rosalie Peterson....... 4,404.57
Kansas land, against interest of Mary Sawyer...................... 1,679.63
Kansas land, against interest of Rosalie Peterson................. 1,739.36
Crescilius Farm, against interest of Mary Sawyer................. 152.67
Crescilius Farm, against interest of Rosalie Peterson.......... 157.30

Under the agreement and decree dividing the property the parties were entitled to enter into the possession of the real property awarded to them from and after the 1st day of February, 1929. Not later than January 27, 1929, plaintiffs' suit was properly entered, as to the property in which interveners are interested, in the *lis pendens* records of Wapello county. In April of the year 1929 the sales contract between interveners and defendants was entered into. In November, 1929, the suit for specific performance of this contract was commenced by interveners against defendants and an attachment in the amount of '$10,000 was levied upon the interests of the defendants in the Leighton building. It is conceded that the interests of interveners, under their contract with defendants, are junior to any rights had by plaintiffs in the Leighton Block under the contract of June 24, 1925. In that it has been held that the contract of June 24, 1925, gave plaintiffs a specific interest in the property, it follows that plaintiffs' interests are superior to the lien of interveners' attachment, and that plaintiffs are entitled to have their rights established and confirmed in and to the defendants' interests in the property, as against interveners.

II. Concerning interveners' claim that the extent of plaintiffs' interests under the contract of June 24, 1925, could not be determined without an accounting between plaintiffs and defendants, it is to be noted that the record is entirely free from any suggestion that any property or money had been transferred or paid by de-

fendants to plaintiffs. In this situation the extent of plaintiffs' rights could be ascertained merely by a determination of the value, for inheritance tax purposes, of the property passing to defendants, and without reference to the state of the accounts between such parties. Prior to the trial plaintiffs and defendants had a pretended accounting in which it was agreed that something over $23,000 was due plaintiffs from defendants on account of the contract and expense and advancements alluded to in the answer to the petition of intervention. It is obvious that such accounting is entirely immaterial to the determination of the extent of plaintiffs' interest in the real property, and consequently is not germane to any issue in the case.

III. Interveners' claim, that the rights of plaintiffs were discharged by the conveyance by defendants of their interests in Kansas land to a trustee for plaintiffs, finds no support in the record. It is argued very strenuously that the transfer of the Kansas land was not made in good faith and was in fraud of creditors. But if it be conceded that it was so conveyed, the very concession absolutely refutes the contention that the land was transferred in satisfaction of plaintiffs' claims to the Iowa properties.

IV. Interveners' contention that plaintiffs had sold their interests in the land to defendants is based upon a confession of judgment by defendants to plaintiffs. The confession of judgment was in evidence before the trial court. It is not in the record before this court, consequently, we are unable to determine the matters involved in it. There are various allusions to the confession of judgment in the testimony of several witnesses, but we are unable to ascertain its terms, or the matters involved, with sufficient particularity to find that by accepting it, plaintiffs transferred their interests in the property to defendants, or that they thereby lost their rights under the contract of June 24, 1925. The conclusion of the trial court was that plaintiffs had not lost their rights under the contract through the confession of judgment, and under the record we reach the same conclusion.

V. The conclusion cannot be escaped, in the view we take of the various questions presented by the pleadings, that at the time of trial, the rights of the plaintiffs should have been established and confirmed against the interests of the defendants in the several tracts of real property in amounts hereinbefore set forth and that further relief should not have been granted to either party. But before decree was entered in the lower court, complications were occasioned by

interveners filing an amendment to their petition of intervention. It has been noted that the case came on for trial on June 8, 1931. It was submitted on June 28, 1931, and the court filed an opinion in the case on July 23, 1931. Difficulty was encountered in framing the decree and considerable delay followed.

On November 10, 1931, interveners filed an amendment to the petition of intervention, alleging that the deeds given by defendants. to the Kansas lands were without adequate consideration and were given by the grantors and accepted by the grantee to hinder, delay, and defraud creditors of the defendants, including interveners, and asking that as a condition to granting any relief to interveners, the grantee, trustee, be required to reconvey such lands to the defendants. It should be noted that Benjamin S. Benson, one of plaintiffs, was the grantee, trustee, in the deeds.

A motion was made to strike the amendment for the reasons that it was filed too late and substantially changed the claims of inter-veners. This motion was overruled by the trial court. We are of the opinion that the amendment should have been stricken. The question of the validity of the deeds to the Kansas land may have been a very important consideration to interveners, but it was entirely foreign to any matter involved in the suit at the time of its final submission. Under the statute amendments may be permitted to con-form the pleadings to the proofs, when the amendment does not substantially change the claim or defense. Code section 11182. Amendments are permitted with liberality, and this court is slow to interfere with the action of the trial court in allowing amendments to be made. But the rules cannot be extended to permit an entirely new cause of action to be pleaded after the final submission of the case. Cary-Platt v. Iowa Electric Co., 207 Iowa 1052, 224 N. W. 89.

This disposition of the amendment makes it unnecessary to further discuss the accounting between plaintiffs and defendants and sundry charges that are the basis for the transfer of the Kansas land to the trustee.

■ VI. The contract between plaintiffs and defendants of June 24, 1925, was a California contract. The record discloses that under California law the rate of interest on money due is 7 per cent. The contract evidently contemplated that the interests of plaintiffs should be discharged by the payment of the value thereof, deter-mined in the manner directed by the contract, upon the receipt of the property by defendants. This would make the money due on

February 1, 1929. It follows that the action of the trial court in allowing interest on the several sums from February 1, 1929, at the rate of 7 per cent per annum was proper.

▮▮▮ VII. To sustain the allegation, of plaintiffs' answer to the petition of intervention, that the conveyance of the Kansas land to a trustee for plaintiffs was not a discharge of the rights of plaintiffs to Iowa property under the contract of June 24, 1925, the facts and circumstances attending the execution of such conveyances and of the condition of the accounts between plaintiffs and defendants were gone into. It is contended by interveners that such evidence disclosed such fraud that plaintiffs are not entitled to relief, under the maxim that a plaintiff seeking relief in equity must come into court with clean hands. We have indicated that the record does not sustain the contention that the conveyance of the Kansas land released plaintiffs' rights under the contract. There was no relationship between the acquisition of plaintiffs' rights in the Iowa properties and the Kansas conveyances. It is not necessary to determine whether the transactions in relation to the Kansas land were in fact tainted with fraud, for the reason that fraud in connection with such transfers would not defeat plaintiffs' right to recover in this case. In 21 C. J. 187, it is said:

"A party is not barred from relief because of misconduct not connected with the matter in controversy; and this is true, although the misconduct may be directly connected with the subject matter of the suit."

In the case of Carr v. Craig, 138 Iowa 526, 116 N. W. 720, 723, this court said:

"The equitable rule that a plaintiff asking relief must come into equity with clean hands has reference only to the relations between the parties, and arising out of the transaction."

▮▮▮ VIII. In the decree the trial court set aside the confession of judgment by defendants in favor of plaintiffs, to which allusion had been made. The validity of this judgment was not questioned by the pleadings and its cancellation was not proper as incidental to relief properly granted. The court also made the reconveyance of the Kansas land to defendants a condition to any relief being granted to plaintiffs. The validity of the Kansas deeds was not properly in issue and the condition imposed by the court was improper.

We reach the conclusion that the rights of the plaintiffs in the several tracts of land described in the petition should be established and confirmed as liens against the interests of the several defendants in the amounts herein indicated as of February 1, 1929, with interest from that date at the rate of 7 per cent per annum; that no further relief should be granted to any party; and that judgment should be entered against interveners for costs occasioned by the trial and appeal.

Unless plaintiffs elect to have decree entered in this court, the cause will be remanded to the trial court for decree in conformity herewith.—Affirmed in part; reversed in part.

KINDIG, C. J., and EVANS, ALBERT, DONEGAN, and STEVENS, JJ., concur.