**CITY OF DES MOINES, Iowa,**
**Appellant,**

v.

**Edward D. HARVEY, Appellee.**

No. 2–57318.

Supreme Court of Iowa.

June 30, 1976.

Philip T. Riley, Corp. Counsel, and Ronald Noah, Asst. City Atty., Des Moines, for appellant.

Gerald R. Ralph,. Des Moines, for appellee.

Submitted to REYNOLDSON, Acting Chief Justice, and MASON, RAWLINGS, REES and HARRIS, JJ.

REES, Justice.

This is an appeal by plaintiff City of Des Moines from a judgment and decree of the trial court dismissing plaintiff's petition in which it sought to enjoin defendant from operating and maintaining a dump and landfill without having secured permits or licenses for the operation of the same. We reverse and remand for the entry of a decree in conformity with this opinion.

Defendant Harvey owns and operates Harvey Landfill at 703 SE 30th Street in Des Moines. Approximately half of defendant's real estate consists of a pit filled with water to a depth of 25 to 30 feet. Most of the material dumped at defendant's premises is pushed into the water-filled pit.

Defendant's premises are almost entirely located in an area which is zoned "R–2", a residential zone with uses restricted to single-family and duplex dwellings. Dumps or landfills are not a permitted use in residential districts in Des Moines, but the Zoning Board of Adjustment is empowered to allow them through the grant of a special use permit. Defendant never applied for such a permit from said Board of Adjustment and never applied to the city council for a license to operate a private disposal site for the disposal of solid waste.

The record establishes that the landfill and dump operation on defendant's premises came to the attention of the Department of Health of the City of Des Moines and the State Department of Health through complaints lodged by residents in the neighborhood during the summer of 1972. At that time wood scraps, appliances, oil drums, industrial waste, wood pallets, rubber tires, steel grindings, paints, solvents, trees, construction waste, demolition waste, cardboard, straw and some garbage and manure were being dumped at defendant's landfill site. The water was black and gave off an offensive odor and a considerable amount of debris was floating on the surface. Defendant had contacted the Natural Resources Council of the State of Iowa, but had made no other contact with the city or state. The Natural Resources Council had deferred action on his application until permits had been obtained from the City of Des Moines and the State of Iowa.

During the month of November 1972 defendant and his counsel met with representatives of the State Department of Health and the City Health Department in order that the health officials could ascertain defendant's intention with regard to the continued operation of the dump or landfill and apprise him of the state and city regulations, ordinances and statutes. Defendant agreed to submit a proposal to the department of health to secure a permit to operate a sanitary landfill, but he was given permission to operate his dump or landfill on a temporary basis provided he limit the materials received to non-floating appliances, building rubble, dirt, concrete and trees, provided such trees were not allowed to float in the water.

Later the same month, defendant made an application to the State Department of Health seeking an exception to departmental rules to permit him to dump certain materials in his landfill. After a review by the department, defendant was advised by letter from the State Commissioner of Pub-

lic Health that an exception could not be allowed and that he would be permitted to dump only inorganic rubble in his premises. "Rubble" is defined by the State Department of Health rules as brick, stone, rock or similar inorganic material, but does not include waste or debris associated with construction projects, demolition materials, industrial waste, rubber tires or wheels, garbage or manure.

Despite the fact defendant was limited to receiving only inorganic rubble at his premises, defendant continued to receive and dump other materials after his application was denied.

The record also indicates that the City of Des Moines was dumping materials in a sand and gravel pit located three blocks north of defendant's property at SE 30th and Raccoon Streets. The materials dumped at the city's site included trees and brush with some demolition waste, street sweepings, concrete, broken asphalt and a few appliances. It appears the site operated by the city is in an area zoned "M–2", a heavy industrial area in which dumping is permitted as a conditional use. No private haulers were permitted to dump materials at the city site, and all of the materials deposited therein came from city property or were generated by city activities. The city operation had received the approval of the State Department of Public Health.

The petition of the City was filed April 11, 1973, and was in three divisions. In Division I plaintiff alleged defendant was using, occupying and permitting the use of his real estate for a dump or landfill in violation of the city zoning ordinance. The plaintiff City sought a temporary and permanent injunction to restrain defendant from using and occupying his property as a dump or landfill, and to require defendant to remove materials illegally dumped on the premises.

In Division II of its petition, plaintiff City alleged defendant was allowing his premises to be used as a public dump for ashes, refuse and other material without a permit from the City of Des Moines Department of Health in violation of § 24–73 of the Municipal Code of Des Moines, and that defendant was allowing materials and substances to accumulate on his premises which were likely to give off offensive odors and to be visually offensive in violation of § 24–74 of the Municipal Code of Des Moines. Plaintiff asked for the issuance of a temporary and permanent injunction to enjoin the defendant from allowing his premises to be used as a public dump, and also asked the court to issue a mandatory injunction requiring defendant to remove from his premises all materials likely to be so offensive.

In Division III of its petition, plaintiff City, for a separate cause of action, asserted defendant was operating and permitting the operation of a disposal site for the disposal of solid waste without first having applied for and received a license for such an operation, as is required by § 52A–18 of the Municipal Code of Des Moines. It was further alleged in said division that defendant was conducting a private disposal operation in violation of § 52A–19 of the Municipal Code. The city requested the court issue temporary and permanent injunctions enjoining and restraining defendant from operating a solid waste disposal site, and issue a mandatory injunction to require defendant to remove all materials accumulated in a way detrimental to health and welfare of the public on his premises.

In his answer, defendant generally denied the allegations of plaintiff's petition and asserted as an affirmative defense that in November of 1972 defendant had received two letters from the Health Engineer of plaintiff City indicating he could operate his landfill on a limited basis. Defendant further alleged he had submitted to the State Department of Health a tentative proposal regarding the future operation of his landfill and contended such facts should estop the city from pursuing its request for a temporary injunction.

A hearing on the City's application for temporary injunction was held on April 20, 1973, before the Honorable Waldo F. Wheeler, Judge of the District Court, who on April 24, 1973, entered his findings of

fact and conclusions of law and an order granting the temporary injunction. In its order the court found defendant was operating a dump or landfill in a "R–2" residential area, which use was not permitted in such an area without the approval of the Board of Adjustment, and defendant had no permits authorizing him to so operate. Judge Wheeler further found that the city had acquiesced in part to the operation of the defendant under certain restrictions, but that defendant had not complied with such restrictions. A writ of temporary injunction was ordered issued, restraining defendant from dumping refuse of any kind upon his property from and after April 24, 1973.

Trial on the merits of defendant's petition seeking a permanent and mandatory injunction was held November 27, 1973, before the Honorable Gibson C. Holliday, Judge of the District Court, who entered his decree on February 11, 1974. In it the court found it had jurisdiction of the parties and the subject matter, "that the equities were with defendant and * * * this case should be disposed of by the application of the * * * old equitable maxim, that he who seeks equity should do equity." The court ordered the City's petition dismissed, and provided in its decree defendant was empowered to continue his operation in the same matter as before the issuance of the temporary injunction with the exception that he was not permitted "to dump garbage or similar refuse of this character * * *."

The City thereafter and on February 22, 1974, filed its motion to require the court to amend or enlarge its findings and conclusions and to modify the decree and combined said motions with a motion for a new trial. In its motion the plaintiff City requested the court "[t]o find whether or not the plaintiff has not done equity toward the defendant. And to find that the City has done equity. If it has not, to state specifically in what particulars the City has not done equity."

All of the motions by the plaintiff City were denied and this appeal ensued.

Substantially plaintiff City states the following issues for review:

(1) The maxim, "He who seeks equity must do equity," is not applicable in the instant case where the plaintiff seeks an injunction to restrain violations of its ordinances and there is no showing that the City failed to accord defendant any of his legal or equitable rights in respect to the subject matter of the litigation.

(2) If the equitable maxim, "He who seeks equity must do equity," is applicable in this case trial court should not have applied the maxim to dismiss the City's petition in equity to enjoin violations of its ordinances after it had been established defendant was violating the ordinances as alleged.

(3) The equitable maxims are not applicable where there is no showing the City has acted improperly or inequitably in its relationship with defendant relating to the subject matter of the litigation.

We have not been favored with a brief or argument on the part of defendant appellee.

I. We have paraphrased the issues stated for review by the plaintiff, but feel that such issues are so interrelated as to be susceptible to disposition without fragmenting the discussion. The refusal of trial court to expand or enlarge its rather abbreviated findings leaves us with a difficult reviewing task, but we are, in any event, unable to reconcile its decision with that of the court, by Judge Wheeler, in the earlier hearing which resulted in the issuance of a temporary injunction. We ascribe to such earlier determination, the definite conclusion that defendant was operating, without license or permit, an open dump on premises in the City of Des Moines which were zoned for residential purposes only.

We can only conjecture that the reference to the requirement for one "seeking equity to do equity" refers to the fact the plaintiff City was maintaining a dump on its own premises in an area proximate to the premises of the defendant. In this connection we must observe the City was using

its own property to dispose of waste generated by the City itself with proper permits or licenses and in an area which permitted the operation of a dump by virtue of the zoning ordinances.

Certainly there is nothing in the relationship between the City and the defendant as disclosed by the record which would indicate any inequitable conduct on the part of the City toward the defendant growing out of the relationship developed by the defendant's operation of the dump or landfill in question. See *Benson v. Sawyer,* 216 Iowa 841, 849, 249 N.W. 424, 428; *Carr v. Craig,* 138 Iowa 526, 116 N.W. 720, 723.

II. Our review is *de novo.* Rule 334, Rules of Civil Procedure. We give weight to the findings of fact on the part of the trial court, but are not bound by them. Rule 344(f)(7), R.C.P. If the judgment in an equity case is correct, it is our duty to affirm it although the basis upon which the trial court reached its result may not meet with our approval. See *Myers v. Smith,* 208 N.W.2d 919, 921 (Iowa 1973); *Baldwin v. Equitable Life Assurance Society of United States,* 252 Iowa 639, 108 N.W.2d 66 (1961).

III. The application of the maxim, "He who seeks equity must do equity," requires a person seeking relief in equity to accord to the other party or to offer to accord to the other party all equitable rights with respect to the subject matter of the suit. *Myers v. Smith, supra; Fitchner v. Walling,* 225 Iowa 8, 279 N.W. 417. "[T]he maxim * * * is held to be ·limited to conduct in dealings between the parties to the controversy, since to hold otherwise would bar equitable relief to a litigant upon proof that at any time prior to his application therefor, he was guilty of inequitable conduct. On the other hand, a person cannot expect a court of equity to enforce an agreement made with the intent that it shall operate as a fraud on the private rights and interests of third persons or the public generally." 27 Am.Jur.2d Equity § 133, p. 663.

There is no evidence in the record in this case of any inequitable conduct on the part of the City toward the defendant Harvey. In fact, quite the contrary appears; the City had extended to Harvey every consideration, permitting him to continue the operation of his dump or landfill without a permit or license with express restrictions on the materials he was permitted to receive, which restrictions were violated.

We must conclude trial court erred in finding the plaintiff was not entitled to the equitable relief it sought by the application of the equitable maxim. The City of Des Moines was entitled to a mandatory injunction enjoining the defendant from operating the dump or landfill on his premises without proper permits and licenses and the trial court erred in not so finding and ordering the issuance of a writ of permanent mandatory injunction to restrain the defendant from so operating.

We therefore reverse the trial court and remand this case for the entry of a decree providing for the issuance of a mandatory writ of injunction, as prayed in plaintiff's petition, to permanently enjoin the defendant from operating a dump or landfill on his premises without securing governmental permission or license.

REVERSED AND REMANDED.