GEORGE J. CARPENTER et al., Plaintiffs, Appellants, v. A. O. LOTHRINGER, Administrator, et al., Defendants, Appellees, CLARA Z. BAKER et al., Intervenors, Appellees.

No. 43678.

SEPTEMBER 28, 1937.

Cosson, Stevens & Cosson and Newport & Steffen, for plaintiffs, appellants.

A. W. Hamann, Lehan T. Ryan, Lane & Waterman, Smith & Swift, Fishburn & Fishburn, L. E. Taylor, Smith & O'Connor, Francis E. Plath, Thuenen & Thuenen, Jas. W. Bollinger, Alfred C. Mueller, Ficke, Noth & Ficke, Cook & Balluff, and Chamberlin & Chamberlin, for defendants, appellees.

Lane & Waterman, for intervenors, appellees.

KINTZINGER, J.—William F. Winecke died in January, 1927, leaving a last will and testament which was duly admitted to probate.

Ada B. Winecke, his widow, died in September, 1932, leaving a last will and testament which was duly admitted to probate.

The will of William F. Winecke provides in substance as follows:

In Item I he directs the payment of his just debts and funeral expenses.

In Item II he names the executors of his estate.

In Item III he gives to the Union Savings Bank & Trust Company, as trustee, "all the rest, residue and remainder of his estate * * * to have and to hold * * * absolutely and forever, subject to the following limitations and conditions":

"1. In case my beloved wife, Ada B. Winecke, survives me, I give her the right to receive from my said Trustee *all the net income of my said estate for and during the term of her natural life, and I further give and grant unto my said wife full power to dispose of any and all property belonging to me at the time of my death, and her request or order shall be all the authority necessary for my Executors or Trustee to receive in disposing of all or any part of my estate.* (Italics ours.)

"2. After the death of my said wife, if she should not have otherwise disposed of my estate, or in case she should not survive me, I direct my said Trustee to set aside the sum of Seventy-five Thousand ($75,000.00) Dollars in a Trust Fund separate and apart from my estate, and the income of such Trust Fund I give and devise to my wife's nephew, George J. Carpenter, for * * * the term of his natural life, * * *."

In the same paragraph he makes specific provision for the disposition of said $75,000 trust fund after the death of said George J. Carpenter.

In paragraph 3 of Item III he provides that, "after the death of my said wife, *if she should not have otherwise disposed of my estate*," the income of a $40,000 trust fund be paid to Mrs. Clara Z. Baker, during her life, and at her death such trust fund be merged with the remainder of his estate.

In paragraph 4 of Item III, "after the death of my said wife, if she should not have otherwise disposed of my estate," he gives the income from a trust fund of $40,000 to Helena Becker during her life. This paragraph also provides for a disposition of the remainder of said trust fund after the death of said Helena Becker.

In paragraph 5 of Item III, "after the death of my said

'wife, if she should not have otherwise disposed of my estate,'' he gives the sum of $1,000 each to five other relatives, and if they die without issue, their shares to go to their survivors.

In paragraph 6 of Item III, ''after the death of my said wife, if she should not have otherwise disposed of my estate,'' he gives the sum of $1,000 each to three other relatives, with remainder to their survivors.

In paragraph 7 of Item III, ''after the death of my said wife, if she should not have otherwise disposed of my estate,'' he gives an endowment fund of $20,000 to the Unitarian Church of Davenport for certain purposes.

In paragraph 8 of Item III, ''after the death of my said wife, if she should not have otherwise disposed of my estate,'' he gives two bequests of $500 each to the Oakdale Cemetery Association of Davenport for perpetual care and flowers for two cemetery lots. In paragraph 9 of Item III, ''after the death of my said wife, if she should not have otherwise disposed of my estate,'' he gives the sum of $2,000 each to the following organizations of Davenport, Iowa: (a) The Lend-A-Hand Club; (b) the Friendly House; (c) the Salvation Army; (d) the Ladies Industrial Relief Society; (e) the Visiting Nurses Association; (f) the Clarissa C. Cook's Home for the Friendless; and (g) to the Masonic Society of Davenport $5,000 as a trust fund for certain purposes.

In paragraph 10 of Item III, he provides that ''all the rest, residue and remainder of my estate remaining at the death of the last of the life tenants mentioned in this, my will, shall be divided by my trustee pro rata among the beneficiaries named in subdivision '9' of this Item * * * of * * * my will in the proportion that the amount devised by me to each of such beneficiaries bears to the total amount remaining in the hands of my said trustee at the death of the last of the life tenants mentioned in this my will.''

In Item IV he provides as follows:

''As hereinbefore stated it is my Will that the Union Savings Bank & Trust Company of Davenport, Iowa, shall act as Trustee in all of the Trusts created under this Will, except as otherwise provided, and I hereby give and grant unto and confer upon my said Trustee full, ample and complete right, power and authority to grant, bargain, sell and convey and to convert

into cash, at either public or private sale, and without appraisement, all stocks, bonds and all property I may own at the time of my demise, be the same real, personal or mixed, in accordance with its judgment and discretion, including all real estate whereever the same may be situated, without any application to and without the approval or confirmation by the probate Court having jurisdiction of my estate, intending that my said Trustee shall have the same right, power and authority in the premises as I myself have while living; and to manage and control the proceeds received for all such property, and to invest and reinvest any or all of the proceeds of any of my property in like manner, without any application to and without the approval or confirmation of the Probate Court; * * *.''

(Signed) ''this 20th day of October, A. D. 1926.''

The will of Ada B. Winecke provides substantially as follows:

In paragraph I she directs payment of all her just debts and funeral expenses.

In paragraph II she provides that:

''The devises and bequests made in this will are intended to and shall include all my property and all property which I have or shall have the right to dispose of by will or otherwise and all property in respect to and over which I have the power of appointment.''

Paragraph III, as changed by codicil, provides as follows:

''I give and bequeath unto the executor of this will the sum of * * * $60,000 which it shall, before the expiration of the period of administration upon my estate, pay unto the persons and in the amounts indicated and directed by me in writing, witnessed by two persons, which writing may be changed and successively changed by me. The receipt of my executor for said amount, filed with the clerk of the court having jurisdiction of my estate shall be sufficient accounting therefor, without a statement of the disbursement thereof and without receipt from the ultimate beneficiaries. In the event that the entire sum of Sixty Thousand Dollars shall not be required for the payment of the amounts so directed by me, the remainder which may be returned by my executor, shall become a part of my residuary estate.''

In paragraph IV she also gives a certain specific bequest of personal effects to her executor for distribution as directed in a writing signed by two witnesses.

In paragraph V she gives Mrs. Elsa Becker Corbitt and Dr. Walter Becker the sum of $10,000 each.

In paragraph VI she gives to certain surviving relatives and their issue the sum of $8,000.

In paragraph VII she gives $15,000 in equal shares to her relatives, Louise Moser, Dorothy Moser, and Margaret Moser.

In paragraph VIII she gives to the Oakdale Cemetery of Davenport $500 for perpetual care of two lots.

In paragraph IX she gives to the trustees of four Masonic organizations of Davenport the sum of $25,000 for certain purposes.

In paragraph X she provides, inter alia, as follows:

*"All the rest, residue and remainder of all the property * * * which I shall own or be entitled to or be in the possession of at the time of my death * * * I give, devise and bequeath unto the Union Savings Bank & Trust Company * * *,* or corporate successor, *in trust,* for the following trusts, uses and purposes"*: (Italics ours.)

A. The income of $1500 for fresh flowers in the Winecke room in the Oakdale Mausoleum in Davenport.

B. To set aside $50,000, the income of which is to be paid her sister, Mrs. Clara Z. Baker, during her life, and upon her death to become a trust fund established by subdivision "M" of this paragraph.

C. To set apart the sum of $80,000, the income of which is to be paid to her nephew, George J. Carpenter, as long as he lives, with provisions for the disposition of the remainder for other purposes.

D. To set aside the sum of $40,000, the income of which is to be paid to Helena Becker during her life and upon her death said sum to become a part of the trust fund established for subdivision "C" of this paragraph.

E. To set aside the sum of $20,000, the income of which is to be paid to the Unitarian Church of Davenport for certain purposes.

F. The trustee shall pay to the Davenport Lend-A-Hand Club the sum of $10,000 in equal annual installments.

G. The trustee shall pay the Davenport Friendly Society the sum of $10,000 in equal annual installments.

H. It shall pay to the Ladies Industrial Relief Society the sum of $10,000 in equal annual installments.

I. It shall pay to the Visiting Nurses Association the sum of $10,000 in equal annual installments.

J. It shall pay the Salvation Army the sum of $5,000 in equal annual installments.

K. It shall pay the Clarissa Cook's Home for the Friendless the sum of $5,000 in equal annual installments.

L. It shall set apart $15,000 or so much thereof as may be immediately available after the compliance by the executor with the preceding provisions of this will, the net income from which and in addition an amount of the principal, not exceeding $500 in any one year, it shall loan or give in amounts determined by it or recommended by the Etude Club of Davenport, for higher education in music, literature or art, by reason of the special aptitude of such persons therefor.

M. ''The remainder of the money and property described in this paragraph, including all money and property which may revert to my residuary by the termination of the particular trusts in this will provided for, or by the lapse of devises or legacies shall be kept and held by my * * * trustee, as the 'William F. and Ada B. Winecke Fund' '' for certain purposes.

In paragraph XI she appointed the Union Savings Bank & Trust Company of Davenport executor of her estate with certain powers and directions.

Mr. and Mrs. Winecke's wills are hereinabove set out substantially in extenso for the purpose of considering their "intent".

Under the provisions of her will, Mrs. Winecke assumed the right to dispose of her own individual property, as well as that left by Mr. Winecke, amounting to over $250,000. This action was commenced in equity testing her right to dispose of Mr. Winecke's estate by her own will, and to impress a trust thereon in favor of plaintiffs.

Soon after the appointment of the executors and trustee of Mr. Winecke's estate, Mrs. Winecke, under the authority of that part of her husband's will giving her ''full power to dispose of any and all property belonging to him at his death,'' ordered and requested the trustee to transfer and convey to her

all of the property devised to the trustee under her husband's will, giving him her receipt therefor.

The William F. Winecke estate was closed in April, 1928. The Ada B. Winecke will was probated in October, 1932, but this action was not commenced for more than a year after the publication of the notice of the appointment of the executor therein.

One of the questions raised is the right of appellants to bring this action in equity after the close of William F. Winecke's estate and after the period of limitation for claims against the estate of Ada B. Winecke had expired.

If Mrs. Winecke, the widow, had the right to have the decedent's property transferred to herself during her lifetime under the power of disposal contained in the will, or if she had the right to dispose of said property by her own will under such power of disposal, then appellants would have no rights to any of such property under the terms of the William F. Winecke will. The lower court held that she had such power; and also held that if plaintiffs had a claim, it should have been presented in Mrs. Winecke's estate, and, as it was not filed within the first year of administration, it was barred. The court also construed the will of Ada B. Winecke against the contentions of plaintiffs. Hence the appeal.

I. One of the first questions for consideration is whether or not, under the terms of her husband's will, (1) Mrs. Winecke, under the power of disposal contained therein, had the right to have all of his estate and property transferred to herself during her lifetime; and (2) whether or not, under such power of disposal, she had a right to make a disposition of all of her husband's estate by her own will.

The cardinal principle in the construction of a will is to take it by the four corners and discover the intention of the testator.

"The intention of the testator is ever the polestar in the interpretation of wills, and the object is always to discover that intent by an examination of the language used in the entire will." In re Vail's Estate, 223 Iowa 551, 556, 273 N. W. 107, 109; Hamilton v. Hamilton, 149 Iowa 321, 128 N. W. 380; Boekemier v. Boekemier, 157 Iowa 372, 138 N. W. 493; Olson v. Weber, 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370; Iowa

City State Bank v. Pritchard, 199 Iowa 676, 202 N. W. 512; In re Bunting's Estate, 220 Iowa 186, 261 N. W. 922.

In Hamilton v. Hamilton, 149 Iowa 321, l. c. 330, 128 N. W. 380, 383, we said:

"Where the power is testamentary in character, the rules governing the construction of wills are to be applied. The intent of the testator is the central question, and its answer is to be found by reading the entire instrument, keeping in view the circumstances under which it was made and the purpose or end which the power was created to serve."

■■■ (1) Did the power of disposal given in paragraph 1 of Item III of Mr. Winecke's will give the widow the power to have the entire estate transferred to herself? The power of disposal therein contained is in the following language:

"I give her the right to receive from my * * * trustee all the net income of my * * * estate for and during the term of her natural life, and I further give and grant unto my said wife full power to dispose of any and all property belonging to me at the time of my death, *and her request or order shall be all the authority necessary for my executors or trustee to receive in disposing of all or any part of my estate.*" (Italics ours.)

It is contended that he did not *intend* to give his wife power to *dispose* of his property by transfer to herself, because in this paragraph, which is the only one containing any power of disposal, he expressly says:

"I give her the right to receive from my said trustee *all the net income of my said estate for and during the term of her natural life.*" (Italics ours.)

This clearly indicates an intention to transfer to his wife only the *net income* from his estate during her life. This provision is inconsistent with any intention on his part to transfer the *entire or gross* estate to her during her lifetime. A construction of the will authorizing such transfer is contrary to, and inconsistent with, the intent shown by the clear terms of the will, and the *intent* must control. If he intended to give her the property outright, he could easily have said so.

A transfer of the property to herself is not a disposition thereof. By attempting to do this she would be *receiving* the

property and not disposing of it. It still remained in her hands until the time of her death. He gave her the right to dispose of all of his property during her lifetime, but not the right to receive it.

To "dispose of" means "to get rid of; to put out of the way; to finish with; to transfer to the control of someone else, as by selling; to alienate; part with; relinquish, bargain away." Webster's New International Dictionary (Second Edition).

It is obvious that he intended to give her only the right to receive the net income, but not the entire property.

 (2) One of the purposes of the testator was to make ample provision for the care of his wife during her lifetime. This was done by giving her the "net income" therefrom for life, and by giving her the power of disposing of it during her lifetime. Did such power authorize the widow to dispose of the remainder of his estate by her own will? If testator's will contained no provisions for a disposition of his property after his widow's death, there might be some apparent reason for the contention that the power of disposal might authorize a disposition thereof by her will. But a casual reading of the will clearly shows that no such thought was in his mind, because he himself, in paragraphs 2 to 9, inclusive, of Item III of his will, *made clear, definite and specific provisions for a disposition of the remainder of his property after his widow's death.*

There is no language in his entire will indicating any intention to give his wife power to dispose of the property by her will. If he intended to give her this power, he could easily have said so. The terms of his will all point to a contrary intent. It would require a forced and unnatural construction of the language used to give it such a meaning.

If she was granted power to dispose of his property by her own will, that power must be found in the following language of his will:

"And I further give and grant unto my said wife full power to dispose of any and all property belonging to me at the time of my death, and her *request or order* shall be all the authority necessary for my executors or trustee to receive in disposing of all or any part of my estate." (Italics ours.)

That this language did not give her power of disposal by will is clearly manifest because of the provision that *such dis-*

*posal be made by her request or order upon the executors or trustee.* This language clearly indicates the *necessity of giving an order or request to the executor for the purpose of carrying out the power of disposal granted in the will.* If Mr. Winecke intended to give her the power to dispose of his property by her own will, he would not have said *that the power of disposal be carried out by a request or order from her to the executors or trustee,* because such language clearly indicates a disposal by an *order or request* given them in her lifetime. Such language is inconsistent with any intention to authorize a disposal by her will.

Another convincing reason why the power of disposal contained in paragraph 1 of Item III of the will does not include the power of disposal by her own will, is because by paragraphs 2 to 9 of Item III, Mr. Winecke himself made careful, painstaking, definite, and specific provisions for a disposition of the remainder of his estate *"not disposed of by his widow"* *during her lifetime.* Each and all of the paragraphs contained in Item III are preceded with the following provision:

"After the death of my said wife, if she should not have otherwise disposed of my estate, etc."

These paragraphs, with paragraph 10, clearly provide for a vested remainder over in the various devisees and legatees named therein.

■■■ Nor can it be contended that the grant of the life use of the net income with the power of disposal conveys a fee. Under a will containing somewhat similar provisions, this court, in Olson v. Weber, 194 Iowa 512, 513, 187 N. W. 465, 466, 27 A. L. R. 1370, held that a grant of a life estate with remainder over is not converted into a fee because of the addition of a power in the life tenant to sell such part of the property as he may think best.

In that case the will provided:

" 'I will, devise and bequeath unto my wife * * * all the property, real, personal and mixed, of which I may die seized or be entitled to at my death, to have and to hold for and during her natural lifetime; *with full power,* however, to my said wife *to sell and convey any or all of my said estate,* real or personal, as she may see fit, *and use the proceeds thereof as she may see fit,*

but it is further my will that my said estate or whatever part thereof that remains undisposed of by my said wife at her death, shall go to and be held by Emma B. Taylor, wife of James A. Taylor, * * * for and during her natural lifetime, and at her death to be divided equally between the children of said Emma B. Taylor.' "

The court in that case said that the giving of a life estate, coupled with the power of disposal, did not enlarge a life estate into a fee, but created a life estate in the first taker and "a vested remainder in the remainderman," and that "such a provision does not purport to give the first taker absolute ownership. * * * It may not be questioned that a testator may grant a life estate and add thereto a general power of disposal of a part or all of the estate without in any manner changing the devise to a fee." In that case the will gave the wife *full power* to convey any and all of the real or personal estate she saw fit, *and use the proceeds thereof as she saw fit.* The power in that case was broader than the power given in the present case, because there she was specifically given the added power to use the proceeds.

In the case at bar, the widow was also granted full power to dispose of the testator's property. In the Olson case, the testator provided that whatever remained undisposed of by his wife at the time of her death should go to the person named in his will. In the case at bar, the testator carefully and specifically provided that whatever remained undisposed of by his wife at the time of her death should be disposed of in the manner provided in his own will.

In each of these cases a life estate was granted and in each a remainder over was granted. In each case the power of disposal was given. In the Olson case the widow was given the power to sell the property and use the proceeds as she saw fit. In the case at bar, she was given power to dispose of the property. In both cases, the power to dispose was granted. The sale of property during her lifetime is a necessary prerequisite to a disposal thereof. In the Olson case, the property was sold by the widow and the proceeds reinvested in other property. The will in that case gave the widow the absolute right to use the proceeds from the sale as she saw fit. Nevertheless, this court held that the widow, as life tenant, in exercising the power to sell, took only a

life estate in the newly acquired property purchased by the proceeds of the sale of the old.

We think the rule announced in the Olson case controls the ruling in the case at bar. The will in the instant case provides that all property not disposed of by the widow shall go to certain definite remaindermen, as provided by the will of her husband. This, in our opinion, conclusively shows that it was the intention of the testator that any property not disposed of by the widow during her lifetime descends according to the will of Mr. Winecke.

It necessarily follows that as the purported disposition of the property by her will is not and was not made during the lifetime of the widow, the property could not, therefore, be disposed of by her will. The following cases lend support to this conclusion: Podaril v. Clark, 118 Iowa 264, 91 N. W. 1091; Holmes v. Nelson, 148 Ill. App. 554; Carter v. Carter Coal Co., 298 U. S. 238, 56 S. Ct. 855, 80 L. Ed. 1160, 1197; Cales v. Dressler, 315 Ill. 142, 146 N. E. 162; Smith v. Walker, 118 Me. 473, 109 A. 10; Henderson v. Blackburn, 104 Ill. 227, 44 Am. Rep. 780; Gruenewald v. Neu, 215 Ill. 132, 74 N. E. 101.

In Holmes v. Nelson, 148 Ill. App. 554, the grant was to "Sarah Bean to have absolute title during her life with right to dispose of said land for her support, the remainder to go to Christine Nelson or her heirs." In that case the deed did not limit the power of disposal during her lifetime, and the only limitation was that it should be for her support. She undertook to dispose of the land for her support *by will*. The court in discussing the matter said: "While the words 'to dispose of' are not synonymous with 'sell' the definition of the words must be considered with reference to the connecting words. In this case we are of the opinion that the words 'to dispose of' with the connecting words (the remainder to go to Christine Nelson or her heirs) means to sell or place the *land beyond her control by some act by which the control of the property would pass from her in her lifetime* to the extent at least of the writing executed by her. * * * The will was not a defective execution of the power, but was a total failure to execute the power contained in the deed." (Italics ours.)

So in this case the will of Mrs. Winecke was not a defective execution of the power of disposal, but a total failure to execute the power of disposal granted.

For the reasons hereinabove set out, we are constrained to hold (1) that the power of disposal granted in the will did not contemplate a transfer of her husband's property to herself, or (2) a disposition thereof by her own will.

From the conclusions reached, it necessarily follows that a distribution of the property left by William F. Winecke cannot be determined by a reference to the will of Ada B. Winecke; but such distribution must be determined by reference to the will of Mr. Winecke. Of course, a distribution of the individual property of Ada B. Winecke must be determined by a reference to her will.

In reaching this conclusion we are governed by the well-known principle followed in the construction of wills, that no two wills can be found exactly alike in language or circumstances, and that each case must be decided upon the language used by the testator, and upon his intention as gathered from the whole instrument.

■■■ II. Defendants-appellees contend that although Mr. Winecke's will should not be construed as giving the widow the power to order the trustee to turn over his property to her, in her lifetime, and although it should not be construed as giving her power of disposal by her own will; nevertheless plaintiffs' claim should have been presented in probate, because the widow must be held to have converted the property of her husband's estate to her own use, and thereby her estate became liable in tort to appellants for such conversion. Appellees, therefore, contend that such conversion constituted a claim against the widow's estate, which should have been presented as a claim against her estate in probate; that such claim was one of the fourth class, and, not being filed within the year of administration, is barred by the statute of limitations.

Appellants contend that this is not a claim against the estate of Ada B. Winecke, but is an action in equity to determine the ownership of the trust property left by William F. Winecke and the appointment of a trustee to carry out the purposes of said trust.

The record shows that the estate of William F. Winecke consisted of both real and personal property. It can hardly be contended that where property is devised or bequeathed to certain persons under a will, that it is necessary to file claims in

the estate therefor. A controversy over the ownership of such property can be determined in equity.

It is the well-settled rule in this state that a devisee or a legatee under a will is not required to file his claim for the property left him in the decedent's estate. In re Glandon's Estate, 219 Iowa 1094, 260 N. W. 12.

■■■ The property in question is trust property and is now in possession of the administrator with the will annexed of the estate of Ada B. Winecke, who is also the trustee of said property. This property can be distinctly traced and identified. The rights of no innocent third parties are in any manner affected. Under such circumstances, a trust may be impressed thereon in equity. 65 Corpus Juris, 963, Sec. 888; Jones v. Nicholas, 151 Iowa 362, 130 N. W. 125; Mandel v. Siverly, 213 Iowa 109, 238 N. W. 596.

■■■ III. Appellants also contend that the court erred in not making an allowance to appellants for their costs and expenses in conducting this litigation. The reason urged for this contention is that the action was commenced in the interests of all parties in the estates of both Mr. and Mrs. Winecke; that a construction of both wills is necessary to determine the rights of the parties hereto, and that appellants should, therefore, be allowed their expenses out of the estate.

The court denied their application. Appellees contend that the lower court had no authority or jurisdiction to make an order authorizing the payment of such fees out of the estate. This is not an action in probate, but in equity, and we find no statute authorizing the allowance of costs or attorneys' fees for the furtherance of this litigation by attorneys for appellants. The allowance of attorneys' fees is purely statutory in this State, and there being no statute authorizing such expenses to an opposing party, except such costs as are taxed against the losing party, it is our conclusion that the action of the lower court in denying the application was right. The following cases lend support to this conclusion: In re Officers's Estate, 122 Iowa 553, 98 N. W. 314; In re Nicholson's Will, 123 Iowa 630, 99 N. W. 300; In re Estate of Berry, 154 Iowa 301, 134 N. W. 867; In re Estate of Colburn, 186 Iowa 590, 173 N. W. 35; In re Estate of Burgin, 191 Iowa 898, 183 N. W. 803.

In re Nicholson's Will, 123 Iowa 630, 1. c. 631, 99 N. W. 300, 301, this court said:

"In this state the matter of the allowance to litigants of costs and expenses, including attorney's fees, is regulated by statute. There is no authority * * * for making an allowance in any given case, save as such may be found in some legislative utterance."

We find no error in the court's ruling on this question.

IV. Appellants also contend that the lower court erred in refusing (1) to permit an amendment to their petition, and (2) its refusal to permit plaintiffs to withdraw part of a stipulation of facts entered into before the case was submitted. The case was submitted on April 30, 1935, upon evidence offered and on an agreed stipulation.

■■■ (1) The application for permission to file an amendment was not filed until June 4, 1935. This was resisted upon the grounds that it was filed too late and raised new issues not presented at the trial.

In this amendment, which was not filed until June 4, 1935, appellants for the first time ask for a construction of paragraph III of the codicil to the will of Mrs. Winecke. This was about five weeks after the trial and submission of the case. No such issue was presented in the court below when the case was submitted, and the court refused to permit appellants to amend their petition after the case had been tried and submitted, because it was filed too late and introduced a new issue into the case.

The filing of an amendment long after the submission of the case is not a matter of right, especially where it changes the issues or introduces new issues in the case, and it is within the discretion of the trial court to refuse to permit such proposed amendments. Code of Iowa, sec. 11182; Emerson v. Converse, 106 Iowa 330, 76 N. W. 705; Moyers v. Fogarty, 140 Iowa 701, 119 N. W. 159; Cary-Platt v. Iowa Elec. Co., 207 Iowa 1052, 224 N. W. 89; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822; Benson v. Sawyer, 216 Iowa 841, 249 N. W. 424.

We find no error in the court's action in refusing to permit the amendment.

■■■ (2) Among the statements contained in the stipulation was one in paragraph 8 thereof, stating that "Intervenor's Exhibit 2 is the writing referred to in paragraph III of the codicil to the will of Mrs. Winecke, and was duly witnessed by two persons," and addressed to the Union Savings Bank & Trust

Company, stating that Ada B. Winecke devised and bequeathed to said bank, as trustee, the sum of $60,000 for distribution among certain persons named therein.

The chief reason given by appellants for moving to withdraw paragraph 8 of the stipulation is that they had no knowledge of the contents of Exhibit 2 referred to therein. After the introduction of the evidence, together with the stipulation, the case was submitted to the court on April 30, 1935. It appears from the evidence that this stipulation was entered into about April 20, 1935. It also appears from the evidence that Exhibit 2 was produced at the trial. Other parts of the stipulation are not necessary to determine the correctness of the court's ruling on this point.

On July 1, 1935, more than two months after the submission of the case, plaintiffs filed a motion to withdraw paragraph 8 of the stipulation entered into on or about April 20, 1935, upon the ground that it was entered into under a mistake of facts as to its contents.

The court refused to strike out this part of the stipulation, because the record shows that appellants had knowledge of the contents of Exhibit 2 at the time the stipulation was entered into.

We have carefully examined the question raised upon this alleged error, and without setting out in detail the evidence in relation thereto, it is sufficient to say that it is our conclusion from the record that appellants had knowledge or means of knowledge of the contents of Exhibit 2 when the stipulation was entered into. There was no error in overruling the motion to withdraw.

▮▮▮ V. Appellants also contend that the court erred in holding that the bequests made in the first nine paragraphs of Mrs. Winecke's will are general legacies, and that those in paragraph X are residuary, and subject to payment only after those in the first nine paragraphs are paid.

Under our conclusions hereinabove reached that the trust estate of William F. Winecke is not subject to disposal by the will of Mrs. Winecke, it necessarily follows that the will and codicil of Ada B. Winecke can apply only to the individual property left by her.

Paragraphs III to IX, inclusive, of Mrs. Winecke's will make general bequests, not subject to any restrictions or limita-

tions. After providing for payment of these general bequests, paragraph X of her will provides as follows:

"X. All the rest, residue and remainder of all the property, real, personal or mixed * * * which I shall own or be entitled to * * * at the time of my death * * *, I give, devise and bequeath unto the Union Savings Bank & Trust Company of Davenport, Iowa, or corporate successor, in trust, however, for the following trusts, uses and purposes."

The trusts, uses and purposes referred to are then enumerated.

Where the terms of a will are plain and unambiguous, a construction thereof by a court is unnecessary. 69 Corpus Juris, 42, sec. 1110; Smith v. Runnels, 97 Iowa 55, 65 N. W. 1002; Scott v. Scott, 132 Iowa 35, 109 N. W. 293; Shirley v. Graham, 201 Ky. 339, 256 S. W. 718; Mitchell v. Mitchell, 126 Wis. 47, 105 N. W. 216.

The bequest made in paragraph IV is a specific bequest, and those made in the other paragraphs, from III to IX, inclusive, are all general. Paragraph X follows paragraphs III to IX, and clearly provides that *"all the rest, residue and remainder * * * which I shall own or be entitled to or be in possession of at * * * my death * * * I give, devise and bequeath unto the Union Savings Bank & Trust Company * * * for the following trusts, uses and purposes."* (Italics ours.) The bequests made in paragraph X are, therefore, residuary.

A "remainder", as defined in Webster's New International Dictionary (Second Edition), is "the portion of a thing remaining, or left, after the separation and removal of a part; residue; remnant."

The only "rest, residue and remainder" there could possibly be in Mrs. Winecke's estate was the amount left after payment of the bequests made in paragraphs III to IX, inclusive.

"Where there is any uncertainty or ambiguity in a will it is proper * * * to resort to * * * established rules for the construction of wills. On the other hand, * * * where such intention is expressed in the will in clear and unequivocal language, there is no need for judicial construction * * * and it should not be * * * permitted." 69 Corpus Juris 42, sec. 1110.

"If, taking the will as a whole in the light of the subjects dealt with, its meaning is plain, there is no legitimate room for judicial construction, and none should be attempted." Mitchell v. Mitchell, 126 Wis. 47, 105 N. W. 216, 217.

Paragraph X is practically the last clause of her will, and provides for the distribution of all "the rest, residue and remainder to the Union Savings Bank & Trust Company in trust." The only subsequent paragraph in the will relates to the nomination of the executor and trustee, etc., and is in no manner inconsistent with the general bequests made in paragraphs III to IX, inclusive.

The legacies given in paragraphs III to IX, inclusive, are, therefore, a charge upon the entire estate. No language could more clearly express an intent to limit the legacies provided for in paragraph X to the property remaining after payment of the preceding legacies than that used therein.

We are constrained to hold that the legacies provided for in paragraph X are residuary legacies and can only be paid after all legacies contained in the preceding paragraphs have been first paid. The lower court so construed this portion of the will, and we find no error therein.

We have carefully examined the entire record and find no other errors therein, except those hereinabove set out.

For the reasons hereinabove expressed, the decree of the lower court is hereby affirmed in part and reversed in part, and the case is remanded for a decree in harmony herewith.—Affirmed in part, reversed in part, and remanded.

HAMILTON, C. J., and ANDERSON, PARSONS, STIGER, and SAGER, JJ., concur.

DONEGAN, J., takes no part.

RICHARDS, J., dissents.