Cheshire, Mar. 4, 1947. } No. 3639.

JOHN A. BELFORD, *Adm'r v.* ARTHUR OLSON, *Adm'r.*

*Hughes & Burns* (*Mr. Benjamin C. Chester* orally), for the plaintiff.

*Arthur Olson* (by brief and orally), *pro se.*

*Philip H. Faulkner* and *N. Michael Plaut* (*Mr. Plaut* orally), for the defendant James A. Leonard.

*Frederick M. Kingsbury*, of Massachusetts (by brief and orally), for the defendants George E. Leonard and Anna L. Underhill.

DUNCAN, J. The will of Charles F. Leonard contains no power of appointment by will, unless it can be found in the provisions of the fourth and fifth clauses, disposing of the residue of the estate. We think it plain that under the fourth clause, Clara took a life estate rather than a fee, a conclusion which the plaintiff does not appear to seriously question. *Weston* v. *Society*, 77 N. H. 576; *Shapleigh* v. *Shapleigh*, 69 N. H. 577; *Burleigh* v. *Clough*, 52 N. H. 267. See also, *Lord* v. *Roberts*, 84 N. H. 517, 519, 520. The life estate was accompanied by a general power to dispose of the corpus of the estate, at the life tenant's discretion. The scope of that power is the focus of the controversy between the parties. The will does not contain in so many words a power of disposal by will. This the plaintiff concedes; but he contends that the power granted is unlimited, and therefore embraces the power to dispose by will as well as by *inter vivos* act or deed. He points out that the purpose for which the power of disposal may be used is not restricted to disposal for the use, or benefit, or comfort of the life tenant, as is sometimes the case, (see, *Weston* v. *Society*, *supra*) and infers from this a purpose to confer a wholly unlimited power.

While the will plainly indicates that the testator contemplated the possibility that all of the residue might be "expended or disposed" of during the life tenancy, it is equally plain that he also contemplated the contingency of a remainder at his wife's decease sufficient to permit payment of a legacy of two thousand dollars and distribution of a balance among his living brothers and sisters, or their issue. If, as the plaintiff contends, the testator had a double purpose: to secure his wife's comfort and pleasure during her lifetime, and to permit her

to dispose of the property by will, plain statement of these purposes would not have been difficult. *Carpenter* v. *Lothringer*, 224 Iowa 439. The fact that no such statement was made is indicative of a different intent.

The life tenant had "full and complete power to dispose" of the residue as she might deem fit and proper. By ordinary definition, the power to dispose is the power to alienate, or to distribute, or to effectually transfer to the control of another. Webster's New International Dictionary (2nd *ed.*). See also, *Carpenter* v. *Lothringer*, *supra*, 448; *Lord* v. *Smith*, 293 Mass. 555, 562. The power was unrestricted as to the purpose of disposal, and was sufficiently broad to permit gratuitous transfer. The crucial issue is whether the testator intended that it should be exercised by will. In *Shapleigh* v. *Shapleigh*, *supra*, 578, the testator left the residue of his estate to his mother "for and during her natural life, . . . with the right and power to dispose of all and every portion thereof in her lifetime, if she shall find the same necessary to her comfortable support and maintenance, or shall desire so to do." There followed further elaboration of the power, including expression of the wish that she "use, have, and enjoy said estate as if it were her own absolutely during her lifetime." Another clause bequeathed and devised all of his estate remaining at his mother's death.

Upon petition by the mother, as executrix, for construction of the will, the court held the estate devised to be an estate for life with powers annexed "which greatly increase its usefulness, although they do not enlarge it to a fee." (*p.* 580). The court further held: "The power is not sufficiently extensive to allow her to dispose of the property by will. It is only to be exercised during the active enjoyment of the life estate and in aid of that enjoyment. Whatever of the property shall remain after she has used in good faith so much of it as she desires, will go to the remainder-man . . ." ( *p.* 581 ). See also, *Burleigh* v. *Clough*, *supra*, 279; *Langley* v. *Tilton*, 67 N. H. 88.

In the *Shapleigh* case the power granted to the life tenant was expressly stated to be a "power to dispose . . . in her lifetime" and in that respect the phraseology differs slightly from that of the power granted to the plaintiff's decedent. The language employed by Leonard was, "to have and to hold during her lifetime with full and complete power to dispose of the same as she deems fit and proper." Yet the only limitation in point of time expressed in the clause is the limitation fixing the quantity of the estate. This limitation is immediately followed by the grant of the power, so that the two phrases

must necessarily be read together. While, unlike the *Shapleigh* will, the limitation "during her lifetime" is not repeated in the, phrase granting the power, there is nothing in the entire will to indicate any different time limitation upon the exercise of the power. The power was in our opinion limited to exercise during the lifetime of the plaintiff's decedent as effectively as if the clause had read: "to have and to hold with full and complete power to dispose of the same as she deems fit and proper during her lifetime." *Cf. Shapleigh* v. *Shapleigh, supra,* 581. If there is a difference, it is not one of ordinary meaning, but of grammatical refinement.

A power to dispose of property during one's lifetime is not a power to leave by will. While the life tenant might and did execute a will "during her lifetime," she did not thereby alienate or transfer any property. No transfer of title could be effected thereby until her death. "Wills are ambulatory instruments . . . wills do not take effect until the death of the testator." *Amoskeag &c. Company* v. *Dartmouth College,* 89 N. H. 471, 475. Until death occurs, nothing can be disposed of by a will. "The will in the life of the testator disposed of nothing, but only provided how the estate should be disposed of after the testator's death . . . . 'Disposed of' means an effectual transfer, or disposition by the will, which could not be, until the death of the testator." *Robert Crane &c. heirs of Jesse Crane, deceased,* 2 Root (Conn.) 487, 488. Compare, *Matter of Ithaca Trust Co.,* 220 N. Y. 437. Since the power of disposal conferred upon Clara Leonard was one which must be exercised, if at all, during her lifetime, it follows that it was not a power exerciseable by will.

In *Ford* v. *Ticknor,* 169 Mass. 276, the court had occasion to construe a will with provisions similar to those of the Leonard will. The residue of the testator's estate was left to his wife "to hold to her during her lifetime, with full power to use and dispose of the same as she shall deem right and proper." The will further provided that after the decease of the wife, "all the remainder" should go to the testator's son. The residuary legatee under the will of the wife contended that the wife had power of disposal by will, relying upon an earlier decision in *Burbank* v. *Sweeney,* 161 Mass. 490. Distinguishing the *Burbank* case, the court said: "There the dominant purpose of the clause which was held to give the power of disposal by will was to authorize the wife to dispose of the property. . . . Here the dominant purpose is to give the wife a life estate, with a remainder given by the testator to his son, and the power of disposal is merely incidental to the life estate to make it fully effectual. . . . We regard the power in

the present case as one only to be exercised during the active enjoyment of the life estate, and in aid of that enjoyment." See also, *Wooster* v. *Fitzgerald*, 61 N. J. L. 368.

The weight of authority, in cases involving similar wills, particularly where the testator undertook to dispose of what should remain after the death of the donee of the power, adopts the view expressed above. Page, on Wills, (3rd *ed.*) *s.* 1318; Jarman on Wills (7th *ed.*), *p.* 765; 33 Am. Jur. 740; Annotations, 2 A. L. R. 1243, 1297; 27 A. L. R. 1381, 1390; 69 A. L. R. 825, 838; 114 A. L. R. 946, 958.

The case of *Burbank* v. *Sweeney, supra,* upon which the plaintiff relies, is less analogous to the instant case than that of *Ford* v. *Ticknor,* which distinguished it. In the *Burbank* case, the testator left his estate to his wife for life, and out of the remainder, legacies to two nephews and to a charity. Then by separate clause, he gave to his wife the right to dispose of the balance of the remainder as she might deem expedient, and in the event she made no disposition of it during her lifetime, left it to his heirs. The power of disposal was given by distinct provision, disassociated from the gift of the life estate. Part of the remainder after the life estate was not subject to the power. The balance the testator disposed of only in the event that his wife did not, and in that case to his heirs. The whole tenor of the instrument, and the surrounding circumstances, were such that a majority of the court concluded that a power of disposal by will was intended. See also, *Kimball* v. *Society*, 65 N. H. 139, 151, 152.

Other cases relied upon by the plaintiff are likewise distinguishable from the one before us. *Fitts* v. *Society*, 75 N. H. 608, and other cases cited, involved wills containing no provisions as to the remainder in the event the estate was not used or disposed of by the life tenant. In still other cases, such as *Knight* v. *Knight,* 162 Mass. 460, it was held that the donee of the power took a fee. As this court said in *Lord* v. *Roberts,* 84 N. H. 517, 521: "Cases which adopt views of strict construction or turn on the special language of the writing creating the power or on particular circumstances have no impressive value here." The question is one of fact for the court. *Remick* v. *Merrill,* 80 N. H. 225, 227, 228, and cases cited.

The argument is made that the intent to create a power of disposal by will is demonstrated by the absence of any requirement that the estate be used for the support and benefit of Clara, and by an implication inherent in the provisions relating to the adoption of a child, that the testator wished to postpone the ultimate distribution of his estate until it should appear whether the child would be a deserving

object of his bounty. The absence of any restriction upon Clara's use is equally well accounted for by a desire to remove any question of her complete right to deal with the estate as against the remaindermen. The implication said to arise from the provisions relating to adoption, so far as we can see, finds no basis in the will. It contains no suggestion that the legacy to the child, or to the testator's brothers and sisters shall be contingent upon the wife's determination through her will, of their suitability as legatees. If the circumstances might have warranted such a postponement as the plaintiff suggests, it is sufficient answer to say that the will contains no indication that the testator intended it. Rather, it indicates an intention that the estate remain in the Leonard name, after his wife had enjoyed it.

In view of the conclusion reached that Clara E. B. Leonard took no power of disposal by will, it is unnecessary to consider the question whether such a power was effectively exercised by her will. None of the estate which came to her under the will of Charles F. Leonard was subject to bequest or devise by her.

*Case discharged.*

All concurred.