ORVIS V. LOVRIEN, appellee, v. MARGARET FITZGERALD, appellant, JOHN P. FITZGERALD et al., intervenors-appellants.

No. 47823.

(Reported in 49 N.W.2d 845)

NOVEMBER 13, 1951.

Garfield, Baker & Miller, of Humboldt, for appellants and intervenors.

F. E. Van Alstine, of Pocahontas, for appellee.

1260

THOMPSON, J.—Edward Fitzgerald died testate, a resident of Humboldt County, on May 3, 1940. He owned the following real estate: "All that part of the South Half (S½) of Section Twenty-nine (Sec. 29), Township Twenty-eight (Twp. 28) Range Ninety-three (Rge. 93), West of the 5th P. M., laying west and north of the east branch of the Des Moines River, in Humboldt County, Iowa."

In area this tract contained 304½ acres; and it is a claimed interest of the plaintiff therein which is the subject of this litigation. The decedent left a will, which was duly admitted to probate, the material parts of which are set out herewith:

"Item 2. All of the rest and residue of my property of every kind and character and wherever situated, whether real, personal, or mixed, I give, devise and bequeath to my wife Margaret Elizabeth Fitzgerald and hereby direct and authorize that she not only have all of the income from my said property but that she be and she is hereby permitted to handle said property as she may see fit for her interests with the right to sell, exchange, or barter the same, so long as she may live and remain my widow.

"Item 3. At her death whatever part or parcel of my said estate whether real, personal, or mixed that is then remaining, I direct shall be divided share and share alike among the following named children and step-children, to-wit:

"Mary Catharine Fitzgerald, daughter, Ellen Bridget Fitzgerald, daughter, Mayme Lovrien, wife of O. V. Lovrien, stepdaughter, John P. Fitzgerald, son, Robert E. Fitzgerald, son, B. W. Fitzgerald, son.

"Item 4. I direct that if Mary Catharine Fitzgerald or Ellen Bridget Fitzgerald depart this life prior to the effective dates as herein made, then in that event, the share that would have gone to such deceased, shall go to the survivor * * *."

Margaret Elizabeth Fitzgerald survived the decedent and is the defendant in this action, known in the record as Margaret Fitzgerald. Both Edward and Margaret Fitzgerald had been previously married. Mary Catharine Fitzgerald and Ellen Bridget Fitzgerald were daughters of Edward by his first marriage; Mayme Lovrien, known in the record as Mary Agnes Lovrien,

was a daughter of Margaret Fitzgerald by her former marriage; while John P. Fitzgerald, Robert E. Fitzgerald and B. W. Fitzgerald are sons of both Edward and Margaret. Mary Catharine Fitzgerald was deceased at the time of the trial in the lower court, and of the making of the contract and deed between Margaret Fitzgerald and the three sons above-named, on April 2, 1945; so that whatever interest she had is now the property of Ellen Bridget Fitzgerald under the terms of the will of Edward Fitzgerald. Ellen Bridget is not a resident of this state and is not a party to this action, although her rights are substantially affected by the result.

Mary Agnes Lovrien was the wife of the plaintiff. She died intestate in Humboldt County on September 9, 1944. Her estate was administered; and it appearing that she left no issue surviving, the administrator and the plaintiff herein attempted to proceed under the provisions of sections 636.32 through 636.38, inclusive, Code 1946, by having the property of the estate appraised, and by selection by plaintiff of sufficient thereof to reach the value of $7500, which the statute in force at that time granted to the surviving spouse. Further detail as to this procedure will be set forth later in this opinion.

On April 2, 1945, the appellants, being the defendant Margaret Fitzgerald, and the intervenors, the three sons above-named, entered into a contract concerning the real estate involved in this case. The contract is lengthy and will not be set out in full. It is sufficient to summarize it by saying that by its terms Margaret Fitzgerald agreed to convey the realty to Ellen Bridget Fitzgerald and the three sons, or such of them as should within sixty days sign the contract; the grantees agreeing upon their parts to take care of or make provision to take care of Margaret Fitzgerald for her lifetime, and to provide adequate medical care and an adequate and decent burial for her, including a suitable tombstone. It was further agreed that the real estate should be handled by an agent designated by Margaret Fitzgerald during her lifetime; this agent to lease and collect rentals, pay taxes, and the cost of repairs and improvements and other proper operating expenses, and from the balance to pay such expenses as might be required or desired by her, and to apply any overplus upon the mortgage

indebtedness upon the property. Ellen Bridget Fitzgerald did not sign the agreement, but the three sons did; and thereupon their names were inserted as grantees in a warranty deed which had been prepared and executed by defendant at the time of the signing of the contract and left with the attorney in Humboldt who prepared the instruments with authority to fill in the names of such of the four named—Ellen Bridget Fitzgerald and the three sons—as might become entitled thereto by executing the agreement within the alloted sixty days.

At the time of the death of Edward Fitzgerald there were two mortgages outstanding against the real estate; one for $10,600 and one for $1700. The second of these had been fully paid by Margaret Fitzgerald, apparently from the income of the farm, in 1943; and the first and larger one had been somewhat reduced from the same source, and at the time of the trial, in 1949, had been fully paid. There is no showing that Margaret Fitzgerald had any property of her own except for a home of undisclosed value in the town of Livermore. At the time this action was brought, the defendant and intervenors had entered into a contract to sell the farm to third parties for approximately $68,000. Here again further detail will be set out later.

On May 14, 1949, plaintiff brought his action against Margaret Fitzgerald, alleging that he was the owner of an undivided one-sixth interest in the described real estate, arising under the will of Edward Fitzgerald; and asking a declaratory judgment and decree establishing such interest, subject only to the life estate of the said Margaret Fitzgerald. John P. Fitzgerald, Robert E. Fitzgerald and B. W. Fitzgerald intervened, making common cause with Margaret Fitzgerald. All asserted that under the will of Edward Fitzgerald, Margaret Fitzgerald had a full power of disposal of the farm, that she had exercised it lawfully, and that the intervenors had become seized, through the warranty deed of April 2, 1945, of full legal title, subject only to the rights of Margaret under the contract of the same date. Defendant and intervenors also prayed that the title of the intervenors be quieted as against the plaintiff; and all denied that the proceedings in the estate of Mary Agnes Lovrien under which plaintiff claimed were proper or valid or sufficient to give him any rights whatever. The

trial court found that the contract and deed of April 2, 1945, were invalid and should be set aside; that the record showed they were made for a grossly inadequate consideration, reflected lack of good faith, were an attempt to defeat the purpose of the testator and to contravene the provisions of the will, were obtained through undue influence and were executed by Margaret Fitzgerald without a full understanding of the nature and effect of the instruments and were detrimental to her interests. The decree confirmed a one-sixth interest in plaintiff, subject to the right of Margaret Fitzgerald to the income during her life, and retained control of the realty in the court.

I. The major question concerns the power of disposal granted to Margaret Fitzgerald. There is no serious claim that she had an absolute fee; but appellants (the defendant and the intervenors) do contend that her right to dispose of the realty was absolute; or, if it be held that she could convey it only if proper for her own interests, that she was the sole judge thereof and her determination thereon was final.

Whether the power is unlimited depends in each case, of course, upon a proper construction of the will. The material clause in the case at bar is this: "that she be and she is hereby permitted to handle said property as she may see fit for her interests with the right to sell, exchange, or barter the same, so long as she may live and remain my widow." The trial court held that this did not give Margaret Fitzgerald an unlimited power of disposal, but that she could do so only "for her interests"; in other words, that there must appear a real advantage to or need in her. We agree with this holding. The language clearly distinguishes this case from In re Estate of Cooksey, 203 Iowa 754, 756, 208 N.W. 337, 338, where the words " 'power to dispose of and pass clear title * * * if she so elects' " were used; from Volz v. Kaemmerle, 211 Iowa 995, 997, 234 N.W. 805, 806, where the will said, " 'especially giving unto her the right to use and dispose of the same * * * as she may see fit,' " and from many other cases cited. We think the intent of the testator that the words "for her interests" apply to the right to sell, barter or exchange as well as to the right to handle the property otherwise is apparent. This view is strengthened by the surrounding circumstances shown by the

evidence. Margaret Fitzgerald was well past seventy when the will was drawn; she was a woman inexperienced in business matters. The family situation was peculiar, in that Mary Agnes Lovrien was a child of Margaret by her first marriage, the other two daughters were children of Edward by his first marriage, and the three sons were children of both Edward and Margaret. Under such circumstances it does not seem strange that the testator, desiring as he evidently did that upon Margaret's death all of the six children and stepchildren should share equally, would put some limitation upon Margaret's power of disposal. Particularly, the two stepdaughters Mary Catharine and Ellen Bridget were not related to Margaret by blood. The testator's desire to have his widow properly cared for is apparent; we think it is equally so that he did not mean to permit her to transfer the property unless it was to her best interest so to do. The case comes within the category represented by Brown v. Brown, 213 Iowa 998, 240 N.W. 910, relied upon by the able trial court, where the power of disposal was held to be limited by the language of the will.

But appellants say that Margaret Fitzgerald must be held to be the judge of what is for her interest; and when she exercised her discretion, such determination was final and conclusive. That such is the law, with one qualification most important in this case, is certain. In Hamilton v. Hamilton, 149 Iowa 321, 325, 326, 128 N.W. 380, 381, Justice Weaver said: "* * * in the great majority of cases it is held that if the grant of power be otherwise full or general in its terms, and the determination of the question is one which involves the exercise of judgment and discretion, the decision made in good faith by the life tenant himself is final and conclusive."

In In re Estate of Worman, 231 Iowa 1351, 1352, 1353, 4 N.W.2d 373, 374, we said, through Justice Oliver:

"It is the rule that where there is a full and general grant of power to the life tenant to encroach upon the principal of the estate to meet some contingency which may or may not arise in the future, and the determination of the contingency involves the exercise of judgment and discretion, the decision made in good faith by the life tenant is final and conclusive."

We accept this as the established rule; but we think it avails nothing to appellants.

The qualification referred to above is destructive of their case. In each of the quotations above appear the words "in good faith." In Hamilton v. Hamilton, supra, at page 329 of 149 Iowa, page 383 of 128 N.W., we used this language:

"*This gives him no license to sell the property and dispose of the proceeds merely to defeat the remaindermen. Such a sale would be tainted with fraud on his part,* and if the purchaser colludes in the fraudulent purpose \* \* \* it will be open to a court of equity to remedy the wrong." (Italics supplied.) .

So in Richardson v. Richardson, 80 Maine 585, 589, 16 A. 250, 251, a case cited and emphasized in argument by appellants, we find this qualification: "If the parties acted *in good faith,* and such must be the presumption, \* \* \* we think it must be pronounced to be valid." (Italics supplied.) The element of good faith is here recognized as necessary.

We turn now to the evidence bearing upon the question of the bona fides of Margaret Fitzgerald in making the transfer to her sons. We assume that the burden was upon the plaintiff to show lack of good faith; and we agree that the trial court was right in finding that there was lack of that good faith required by law, and that the contract and deed of April 2, 1945, were an attempt to defeat the purpose of the testator and contravene the provisions of the will. In passing, it may be said that there is evidence that Margaret, at the time of the trial, hardly knew what she had done with the farm by this contract and deed. But appellants say that this was over four years after these instruments had been executed, and no presumption obtains that her mind was as weak and uncertain in 1945 as it appeared on the witness stand. Assuming that this is so, the only effect is to make Margaret more clearly a party to the bad faith in what was done. She testified repeatedly that she had kept the farm; that the rents were hers; that the farm was hers. The income from the farm was more than she needed; she had lived on it and had accumulated enough therefrom to pay off the mortgages. None of the three sons had any substantial property, nor had they done anything for her since the making of the contract. Indeed, as the contract itself ex-

presses, she at all times had control of the rents, through her agent at least. She seems to have regarded the April 2, 1945, transaction as a testamentary disposition of the property. She retained control over the management of the farm and the income; and when it was sold to third parties, the sum of $8000 made as a first payment went into her bank account. She was in no need, either immediate or prospective, so far as it is given to mortals to look into the future, of any help from the sons; nor was the prospect a rosy one that such help in any substantial form would be forthcoming if she did require it. B. W. Fitzgerald testified:

"Practically nothing has been required of me by that contract since it was signed. I haven't paid my mother anything. At the time the contract was entered into the farm was making good money, more than she was spending. I couldn't see any prospect but what it would continue to do that. I didn't anticipate there was any great burden falling on me because of that contract."

This expresses the actual situation. There was no need of Margaret to be met, and no advantage to her in the transaction. We are not forgetting that her judgment on this point was final, *if exercised in good faith*; but the record is such that we must find this latter essential demonstrably wanting. The lack of any benefit to be gained by Margaret Fitzgerald, the grossly inadequate consideration promised, the time of the transfer, following as it did the death of Mary Agnes Lovrien by a matter of months only, all point directly to the correctness of the trial court's conclusion that the transaction was entered into primarily to defeat the purpose of the testator and annul the rights of other remaindermen rather than for the interest of the defendant. The only "interests" served were those of the intervenors. The decree properly sets aside the conveyance.

II. The trial court permitted plaintiff to file a pleading alleging a confidential relationship between defendant and intervenors, in which intervenors were the dominant parties; and further alleging constructive fraud in the transactions of April 2, 1945. This was filed several days after the trial, and appellants predicate error thereupon. In view of our determination in Divi-

sion I, that the conveyance must be set aside for other reasons, we find it unnecessary to determine this issue. The same is true as to the assignment of error based upon the trial court's finding of undue influence and lack of consideration.

III. The decree below, after establishing plaintiff's one-sixth interest subject to rights of Margaret Fitzgerald, provided that the proceeds of any sale of the realty should be under the jurisdiction of the court, and should be considered a part of the estate of Edward Fitzgerald; and that no sale, conveyance or transfer by the widow would be of any validity until first approved by the court. Appellants complain of this as being beyond the prayer of plaintiff's petition and being beyond the power and authority of the court. The petition contained a prayer for general equitable relief, and in addition there is the established rule that equity, having taken jurisdiction, will do whatever is necessary to grant complete relief, to avoid a multiplicity of suits, and if necessary will retain jurisdiction. 1 Pomeroy's Equity Jurisprudence, Fifth Edition, section 235; Donnelly v. Nolan, 235 Iowa 30, 34, 15 N.W.2d 924; and many other cases express this principle. In addition, it now appears that, since the decree was entered, the parties have stipulated that the real estate may be sold and the proceeds held by the court, through a trustee if the court is so advised, the amount remaining after allowances to Margaret Fitzgerald to be invested under appropriate orders. While it was stipulated that this was without prejudice to appellants' right of appeal, we think it definitely places the funds received from the sale of the farm under control of the court, and with the acquiescence, indeed at the request, of the defendant and intervenors. It appears that a sale of the farm to third parties for the sum of approximately $68,000 had been arranged before the trial of this cause; in fact, $8000 of the purchase price had been paid to Margaret Fitzgerald. All parties deemed the sale advantageous and joined in a conveyance, and the above stipulation as to the proceeds was made. Appellants have no just complaint here.

IV. After the entry of decree below, and while this cause was pending on appeal, Margaret Fitzgerald filed her application in the trial court, praying an order allowing her reimbursement

for the amounts paid by her in extinguishment of the two mortgages against the property at the time of the death of Edward, which she alleged she had paid from the income of the farm; and further asking that she be granted support money from the principal or income of the sum received from the sale of the land, as referred to in Division III. It was stipulated that she might file such application without prejudice to her appeal from the decree previously entered; and it was later stipulated as to the amount she was entitled to receive in repayment of her advances to satisfy the mortgages. Apparently she was allowed to retain the $8000 down payment on the farm made by the third party purchasers and was allowed by the stipulation an additional amount of $4071.10 to complete her reimbursement for the mortgage payments. Upon the other branch of her application, requesting an allowance for her support or to replace the farm income which she would otherwise have had, the court found that she had on hand the above sum of $4071.10 and an additional amount of $2700, all of which represented past income from the property. Thereupon her application for further allowances was denied, since she had on hand the above moneys totaling $6771.10, adequate for her support for some time to come. The court did not question her right to resort, when necessary, to the corpus of the estate then on hand in the form of about $59,000 after deducting the payment of $8000 and expenses of the sale; but it held that the application for further allowances at that time was not in good faith, but was an attempt to obtain the principal of the trust, or a part thereof, when it was not needed and so not within the meaning of the will; and that said application was not brought in good faith. From this ruling a secondary appeal was taken, which was submitted with the major case, and must be determined here.

We have pointed out that the sale of the farm to the third parties was completed upon stipulation of the appellee and appellants, and the sum received substituted for the land. It is apparent, therefore, that Margaret Fitzgerald's application, made at a time when there was no available income, and when she had a substantial amount of past income from the farm in her hands, was, as the trial court found, an attempt to obtain for herself a part of the principal of the estate when it was not needed. She

did not have the right to convey to or appropriate for herself the corpus of the property under these circumstances. Carpenter v. Lothringer, 224 Iowa 439, 275 N.W. 98. Her application was properly denied. The money is still under the jurisdiction of the court. She is entitled to the income as it may be earned in the future from investment of the sum on hand. If this is insufficient for her proper needs, and when she has exhausted the sum now available to her as the proceeds of past income, she may properly make application for an allowance from the corpus of the estate.

V. The plaintiff alleged in his petition, and the court found, that he is the owner of an undivided one-sixth interest in the real estate first described above, subject to the rights of Margaret Fitzgerald, which we have discussed previously in this opinion. That plaintiff had an interest in the land sufficient to support his action cannot be disputed. We have held, in Reichard v. Chicago, Burlington & Quincy R. Co., 231 Iowa 563, 1 N.W.2d 721, that under the circumstances existing here, the surviving spouse takes under Code section 636.32 (then section 12017, Code 1939) rather than under the directory proceedings provided by sections 636.33 et seq. See page 580 of the last cited opinion. In that case no administration had been had on the decedent's estate; but after an interesting and logical analysis Justice Bliss, speaking for the court, held that it was not essential to administer to make title in the surviving spouse.

The Reichard case also holds that a showing as to the amount of the deceased's estate, in reference to the $7500 value first going to the spouse (now $15,000 under the later statutes not material here) may be made in equity or by affidavit. In the instant case an attempt was made to fix the values by following the provisions of section 636.33 and related sections immediately following. Appraisers were appointed in the estate of Mary Agnes Lovrien, and, while the point is disputed and argued at some length, we think that sufficient notice was given to Margaret Fitzgerald of the time and place of appraisement in accordance with the order of the court. We also think that no notice was required to be given to the intervenors, in spite of the fact that they held color of title to the real estate involved under the deed of April 2, 1945. Since Mary Agnes Lovrien died intestate and

without issue, the only persons interested in her estate were the plaintiff, as surviving spouse, and Margaret Fitzgerald, her mother. Intervenors took their title, if any they had, from Margaret Fitzgerald and with full knowledge of the limitations upon her right to transfer.

But appellants say that in any event the appraisal proceedings were defective and insufficient to give appellee an undivided one-sixth interest in the land in question, subject of course to the rights of Margaret. The inventory in the Mary Agnes Lovrien estate described the property in this way:

"An undivided one-sixth (⅙) interest in and to residual property of the estate of Edward Fitzgerald, deceased, late of Humboldt County, Iowa, the nature and extent of which cannot be presently determined as the same is now held in life estate with power of disposal by the life tenant."

The appraisal as returned described it as:

"An undivided ⅙ interest in and to the residual property of the estate of Edward Fitzgerald, deceased, 240 acres @ $130.00 per acre         $31,200.00
less mortgage of record         5,500.00

        $25,700.00
⅙ interest—undivided         4,283.33."

The appraisers were in error in their estimate of the amount of land involved, since the farm actually contained 304½ acres.

Mary Agnes Lovrien also owned a one-half interest in other realty, appraised at $2956.25; so that the total of her property on the face of the appraisement appeared as of the value of $7258.33. Thereupon the plaintiff, proceeding under section 636.38, selected the two real-estate interests as making up the $7500 which he was entitled to receive. It is apparent that, if the appraisers had included the entire 304½ acres of the farm at the same value of $130 per acre, the valuation would have been increased by $1397.50, thus bringing the total of the two parcels appraised to $8655.83, or $1155.83 above the $7500 plaintiff was entitled to select. He would, of course, have an undivided one-

half interest in the overplus, with Margaret Fitzgerald inheriting the other one half. If no more appeared on the record in the Mary Agnes Lovrien estate, it would be necessary to remand this cause for a determination of the exact amount of the plaintiff's interest.

But we think appellants are not entitled to raise the question at this time. We have held that Margaret Fitzgerald was the only person, other than plaintiff, interested in the appraisal, and that she was given sufficient notice thereof. An order of court under date of March 22, 1947, the date fixed by the notice to Margaret Fitzgerald for hearing on the appraisement, after correctly describing the real estate with which we are here concerned, recited that the one-sixth interest of Mary Agnes Lovrien therein had been appraised at $4283.33, and that said appraisal was correct and proper. The order further found that all persons entitled to notice had been served as directed by the court and that the appraisal had been available for examination to them. It further found that all conditions precedent to distribution of the property of the estate as authorized and directed by sections 636.38 et seq. had been fully complied with and performed, and that plaintiff was entitled to select from the realty appraised property equal in value to the sum of $7500, prior to distribution to the heirs. The plaintiff was directed to make his selection and the clerk of the court was ordered thereupon to make and enter of record a transfer of title.

Thereupon the plaintiff made his selection, claiming all of the interest of his deceased spouse in the two parcels of realty above referred to, including the one-sixth interest in the Edward Fitzgerald land, by proper description. This was filed on March 29, 1947. Following this came the final report of the administrator, of which notice was duly given to Margaret Fitzgerald, again by registered mail as ordered by the court. The final report recited the proceedings had, included a proper description of the Fitzgerald real estate, and the selection of the interest of Mary Agnes Lovrien therein by plaintiff as part of the valuation of $7500 to which he was entitled. The order of court, dated and filed May 29, 1947, following the filing of the final report, recited the appraisal of the realty under sections 636.33 and following, Code

1272

of 1946, the selection by plaintiff in accordance with said statutes, and that "said property has been by order of court duly distributed to him." The final report was fully approved and the administrator discharged.

Margaret Fitzgerald made no appearance or protest in response either to the notice of time and place fixed for appraisal or to the notice of filing and time for hearing on the final report. The distribution to plaintiff, whether or not defective originally, and whether or not Margaret Fitzgerald might have challenged the accuracy of the appraisal or the alleged improper and incomplete description of the real estate, has been made and is a verity. The one-sixth interest in the farm involved here was set off to plaintiff upon his selection by proper description and by an order of court which cannot now be collaterally attacked. It has stood as an order and judgment of the probate court of Humboldt County without direct attack at any time, and was without even a collateral attack until the bringing of this action, about two years later. The intervenors were not entitled to notice; Margaret Fitzgerald had notice and failed to act. The question cannot now be raised.

The decree, orders and rulings of the trial court were in all respects in accordance with law.—Affirmed on both appeals.

OLIVER, C. J., and BLISS, WENNERSTRUM, MULRONEY, SMITH, MANTZ, and HAYS, JJ., concur.

GARFIELD, J., takes no part.